1  DANIEL K. SPRADLIN - State Bar No. 82950
   dspradlin@wss-law.com
2  ROBERTA A. KRAUS - State Bar No. 117658
   rakraus@wss-law.com
3  WOODRUFF, SPRADLIN & SMART, APC
   555 Anton Boulevard, Suite 1200
4  Costa Mesa, California 92626-7670
   Telephone: (714) 558-7000
5  Facsimile: (714) 835-7787

6  Attorneys for Defendants CAPISTRANO UNIFIED SCHOOL
   DISTRICT and DR. JAMES CORBETT

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  CHAD FARNAN, a minor, by and          CASE NO.: SACV07-1434-JVS (ANx)
    through his parents BILL FARNAN and
12  TERESA FARNAN,                        **DEFENDANTS' NOTICE OF
                                          MOTION AND MOTION FOR
13              Plaintiff,                ORDER AMENDING SCHEDULING
                                          ORDER AND TO AMEND ANSWER
14  v.                                    TO ASSERT QUALIFIED
                                          IMMUNITY AS AN AFFIRMATIVE
15  CAPISTRANO UNIFIED SCHOOL             DEFENSE; MEMORANDUM OF
    DISTRICT; DR. JAMES CORBETT,          POINTS AND AUTHORITIES;
16  individually and in his official capacity as   DECLARATION OF DANIEL K.
    an employee of Capistrano Unified School    SPRADLIN**
17  District; and DOES 1 through 20,
    inclusive,
18                                        HEARINGS PENDING:
                Defendants.               TYPE:        Motions
19                                        DATE:        August 31, 2009
                                          TIME:        1:30 p.m.
20  ─────────────────────────────        COURTROOM: 10C/Judge Selna

21  CALIFORNIA TEACHERS
    ASSOCIATION/NEA; and
22  CAPISTRANO UNIFIED EDUCATION
    ASSOCIATION,
23
            Union Intervenors/Defendants.

24

25  ///

26  ///

27  ///

28  ///

                                    i

TO:   ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 31, 2009, at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 10C of the above-entitled Court, located in the Ronald Reagan Federal Building, 411 West Fourth Street, Santa Ana, California 92701, Defendants CAPISTRANO UNIFIED SCHOOL DISTRICT ("CUSD") and DR. JAMES CORBETT ("Dr. Corbett") (sometimes collectively "Defendants") will move this Court for an order amending the Scheduling Order and extending the time limit for hearing motions to amend and to determine the applicability of the qualified immunity defense and to amend their answer. A copy of this amended answer is attached as Exhibit A.

This motion is made on the grounds that good cause justifies the granting of this motion.

This motion is based on this notice, the attached memorandum of points and authorities and declaration of Daniel K. Spradlin, the Court's order regarding the parties' motions for summary judgment, the evidence filed by the parties' in support of their motions for summary judgment, such matters of which this Court may be asked to take judicial notice, as well as the pleadings and records on file in this matter.

DATED: July 24, 2009          WOODRUFF, SPRADLIN & SMART, APC


By: _____
DANIEL K. SPRADLIN
ROBERTA A. KRAUS
Attorneys for Defendants CAPISTRANO UNIFIED SCHOOL DISTRICT and DR. JAMES CORBETT

645599.1

**TABLE OF CONTENTS**

1.  INTRODUCTION ................................................................................1
    A.    Statement of Facts ..............................................................2
2.  GOOD CAUSE EXISTS FOR AMENDING THE SCHEDULING ORDER ...............................................................................6
3.  THE FEDERAL RULES OF CIVIL PROCEDURE REQUIRE THAT LEAVE TO AMEND BE "FREELY GIVEN" ....................................8
    A.    The Amendment is Not Sought in Bad Faith .....................10
    B.    The Amendment is not Futile .............................................12
    C.    The Amendment will not Cause Undue Prejudice to Farnan.............13
    D.    The Amendment will not Create Undue Delay ..................15
4.  CONCLUSION ...............................................................................16

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

iii

645599.1

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

Anderson v. Creighton, 483 U. S. 635 (1987) ........................................11, 15

Ascon Properties, Inc. v. Mobil Oil Company, 866 F.2d 1149 (9th Cir. 1989) ...........10

Behrens v. Pelletier, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) ..............11

D'Aguanno v. Gallagher, 50 F.3d 877 (11th Cir. 1995) ...........................................13

Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048 (9th Cir. 2003) ....................14

Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ............................9

Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727,

    73 L.Ed.2d 396 (1982) ...........................................................10, 11, 15

In re Circuit Breaker Litigation, 175 F.R.D. 547 (C.D. Cal. 1997)...............................14

Johnson v. Mammoth Recreations, Inc., 975 F. 2d 604 (9th Cir. 1992) .......................7

Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) .................11

Morongo Band of Mission Indians v. Rose,

    893 F.2d 1074 (9th Cir. 1990)..............................................10, 12, 14, 15

Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)...................11

Thornton v. McClatchy Newspapers, Inc., 261 F.3d 789 (9th Cir. 2001)...................10

U.S. v. Webb, 655 F.2d 977 (9th Cir. 1981).........................................................9

United States v. First Nat. Bank of Circle, 652 F.2d 882 (9th Cir. 1981)...................7

United States v. Lanier, 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)........15

## **TREATISES**

3-15 J. Moore, Moore's Federal Practice ¶ 15.14 (3d ed. 2008).................................9

## **OTHER**

Federal Rules of Civil Procedure, Rule 15 ........................................................2, 8

Federal Rules of Civil Procedure, Rule 15(a).................................................8, 9, 14

Federal Rules of Civil Procedure, Rule 16 .............................................................8

Federal Rules of Civil Procedure, Rule 16(b)(4)......................................................6

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

## 1.   INTRODUCTION

Throughout this litigation Plaintiff CHAD FARNAN, a minor, by and through his parents BILL FARNAN and TERESA FARNAN ("Farnan") has asserted that "the gravamen of [his] case was and remains the barrage of religious hostility expressed by Dr. Corbett throughout the Fall 2007 semester during his Advanced Placement European History class."[1] As posited by Farnan, this case at no time "concern[ed] a few incidental statements of a teacher that may periodically reflect upon the teacher's personal beliefs" but concerned Dr. Corbett's alleged "continual and incessant actions."[2]

On May 1, 2009, this Court found that Dr. Corbett did *not* engage in a continual and incessant barrage of religious hostility as alleged by Farnan; however, this Court did find that that Dr. Corbett violated the Establishment Clause when he made the single statement "religious, superstitious nonsense" during a discussion about a prior lawsuit filed against CUSD, Dr. Corbett and others by former biology teacher John Peloza who had refused to teach the state-mandated curriculum (the theory of evolution) but instead taught creationism in the classroom. The Court found that no other statement attributed to Dr. Corbett during the AP European History course violated the Establishment Clause and that there was no evidence presented sufficient to establish that Dr. Corbett had a pattern and practice of violating the Establishment Clause.

It is because of this ruling that it has become apparent that Dr. Corbett is entitled to a determination of qualified immunity in his favor. While the Court has held that the single statement by Dr. Corbett violated the Establishment Clause, in 2007 the law was not established that a single statement by a teacher made during one

---

[1] See, Plaintiff's reply to Defendants' opposition to Plaintiff's motion for summary judgment, 1:4-6.

[2] See, Plaintiff's opposition to Defendants' motion for summary judgment, 10:14-16.

1

lecture given in the course of a year-long class could trigger an Establishment Clause violation. Accordingly, it did not become apparent that Dr. Corbett would be entitled to a qualified immunity defense until the Court's ruling on the parties' motions for summary judgment on May 1, 2009.

At the same time that it made it ruling on the motions for summary judgment, this Court also ordered the parties to file a joint proposal for disposition of the equitable *and any other remaining issues* no later than May 22, 2009. On May 22, 2009, the parties filed their joint proposal in which Defendants proposed filing a motion to amend their answer under Federal Rules of Civil Procedure, Rule 15, and filing a motion for determination of qualified immunity in Dr. Corbett's favor. At the status conference on June 1, 2009, the Court set the proposed motions for hearing on July 13, 2009, and adopted the proposed briefing schedule set forth in the joint proposal.

On July 13, 2009, this Court denied Defendants' motion to file an amended answer, *without prejudice*, because Defendants first needed to apply to this Court to amend the Scheduling Order, which set a deadline of August 17, 2008 for amending pleadings, and denied the motion for qualified immunity as moot, *without prejudice*, pending a proper motion to amend the Scheduling Order so that the Court could rule on Defendants' motion to amend their answer. Defendants now seek to amend the Scheduling Order so that this Court may hear and rule on their motion to amend their answer and motion for determination of qualified immunity in favor of Dr. Corbett. Further, as a direct result of the Court's May 1, 2009 ruling, Defendants now also seek leave to amend Defendants' answer to include qualified immunity as an affirmative defense. Defendants also concurrently file their post-summary judgment motion for a determination that Dr. Corbett is entitled to qualified immunity.

A.   **Statement of Facts**

On December 13, 2007, Farnan filed his complaint against CUSD and Dr. Corbett seeking damages and injunctive relief. A first amended complaint

2

WOODRUFF SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1  subsequently was filed and Defendants answered the first amended complaint on

2  March 19, 2008. On April 28, 2008, the motion of Intervenors, CALIFORNIA

3  TEACHERS ASSOCIATION/NEA and CAPISTRANO UNIFIED EDUCATION

4  ASSOCIATION ("Union Intervenors") was granted and the Union Intervenors'

5  answer to Farnan's first amended complaint was filed. In their answer the Union

6  Intervenors' asserted the qualified immunity defense on Dr. Corbett's behalf. (See,

7  Exhibit B)

8  　　　Prior to the filing of Defendants' answer, and up through this Court's ruling on

9  the parties' motions for summary judgment, Farnan has contended that Dr. Corbett

10  made anti-Christian or anti-religious comments on a daily basis throughout the 2007

11  semester; that anti-Christian comments essentially were the theme of Dr. Corbett's

12  lectures. According to Farnan, it was the continual and incessant comments attributed

13  to Dr. Corbett that violated the Establishment Clause. Examples of Farnan's position

14  in this regard are voluminous and can be found, by way of illustration, in the

15  following documents:

16  　　　(1)　　Farnan's first amended complaint in which Farnan asserts: "On a regular

17  basis during the Fall 2007 semester . . ." (4:7-11); "Parents and/or students have

18  complained to the District for many years regarding Dr. Corbett's religious hostility

19  expressed in his classroom" (9:26-27); and "Dr. Corbett continues to spend a large

20  portion of class time . . . , he clearly demonstrates hostility towards religion . . .", "As

21  a result of his ongoing comments . . ." (10:3-7);

22  　　　(2)　　Farnan's opposition to Defendants' motion to dismiss in which Farnan

23  asserts:　"statements made by Dr. Corbett are continual and incessant" (10:14);

24  "continual and incessant disapproval of religion" (10:23); "For months Chad Farnan

25  sat in an AP European History class . . . learning . . . about Dr. Corbett's own

26  propagation of a 'religion of secularism'" (12:11-14); and "When taken together, [Dr.

27  Corbett's comments] are clearly anti-Christian diatribes" (15:12-13);

28  ///

3

(3)    Farnan's responses to Defendants' special interrogatories, response nos. 5 and 7 in which Farnan asserts: "Throughout the Fall 2007 semester, Dr. Corbett made numerous statements regarding Christianity and religion generally that expresses a viewpoint that is derogatory, disparaging, and belittling regarding religion and Christianity in particular. . . . While there are individual comments that are particularly offensive and expressive of said viewpoints, those and all of his comments must be taken in context of the entire lecture and class environment . . ." (6:16-25 and 7:20-28);

(4)    Farnan's opposition to Defendants' motion for summary judgment: "Plaintiffs brought this action with the intent to quell the religious hostility that has germinated for many years in Dr. Corbett's public classroom at Capistrano Valley High School" (1:2-4); "numerous hostile comments of Dr. Corbett" (4:4-5); "the Court must inquire into the purpose for the overreaching theme established by Dr. Corbett's lectures" (6:6-7); "[Dr. Corbett] states it many times, and in many ways, both indirectly and directly" (6:16-17); "Dr. Corbett is using his bully pulpit to spew his propaganda . . ." (8:12-13); "Dr. Corbett's statements regarding religion and Christianity, both in Chad's class and other classes, send primarily a message of disapproval of religion" (9:2-4); "Defendants' actions fail the third prong of the Lemon test because the statements made by Dr. Corbett are continual and incessant, and the School District has done nothing to lessen them" (9:18-20); *This case does not concern a few incidental statements of a teacher that may periodically reflect upon the teacher's personal beliefs. Instead, it concerns Dr. Corbett's continual and incessant actions . . ."* (10:14-16; emphasis added); and "When applying the correct standard, and reviewing all of Dr. Corbett's comments instead of singling out a few comments . . ." (14:24-26);

(5)    Farnan's memorandum of points and authorities in support of motion for summary judgment: "[T]eachers, including [Dr. Corbett] violate the Establishment Clause when they use the classroom to *repeatedly express* disapproval of religion,

4

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

religious faith, and the resulting worldviews" (1:6-8; emphasis added); "Defendants' decision to 'teach' anti-Christian themes" (15:8-9); "barrage of hostility aimed at Dr. Corbett's students over the years past" (17:16-17); "the statements of Dr. Corbett are continual and incessant" (18:3-4);

(6)     Declaration of Chad Farnan in support of Farnan's' motion for summary judgment:[3] "Dr. James Corbett spent a significant amount of class time discussing topics and issues not relevant to European history" (2:19-20); "On a regular basis during the fall 2007 semester, Dr. Corbett discussed a wide variety of topics not related to Advanced Placement European History" (3:3-4); "While teaching the subject of the class and while discussing various other topics, Dr. Corbett made statements and expressed viewpoints that were derogatory, disparaging, and belittling regarding religion and Christianity in particular" (3:5-9); "These comments were not limited to one particular day, but instead occurred on most days that I was in his classroom" (3:10-11); "Dr. Corbett's anti-Christian viewpoints are well-known by the students at my high school as they are often presented through comments he makes during class" (3:12-14); "Dr. Corbett made many comments regarding his personal bias against Christianity" (3:15-16); "When Dr. Corbett was talking to my class, he regularly included his own ideas about God and religion" (3:16-17); "As a result of his ongoing comments . . ." (3:19-20);

(7)     Farnan's reply to Defendants' opposition to Farnan's motion for summary judgment: *The gravamen of Plaintiffs' case was and remains the barrage of religious hostility expressed by Dr. Corbett throughout the Fall 2007 semester during his Advanced Placement European History class"* (1:4-6; emphasis added); and

(8)     Farnan's response to Defendants' objections to Farnan's evidence submitted by Farnan in support of his motion for summary judgment: "Dr. Corbett's

---

[3] Many of these same assertions are also contained in Plaintiff's statement of uncontroverted facts and conclusions of law in support of his motion for summary judgment. (See, for example, fact nos. 9, 10, 11, 36, 37)

5

1  habit or routine practice of making negative or hostile comments about religion and
2  Christianity . . ." (3:21-22)

3        This Court, itself, in denying Defendants' motion to dismiss, also noted that the
4  gist of Farnan's claim against Defendants is based on Farnan's claim that his rights
5  were violated by a "practice and policy hostile toward religion and favoring irreligion
6  over religion." (Court's minute order denying motion to dismiss, ¶2)

7        Now, following the ruling by this Court on the parties' motions for summary
8  judgment, it has become apparent that Dr. Corbett is entitled to a qualified immunity
9  defense. As noted above, up until that ruling Farnan at all times asserted that it was the
10 barrage of comments made by Dr. Corbett that violated the Establishment Clause and
11 that this case was not about "a few incidental statements;" however, that is exactly
12 what this Court ruled when it granted Farnan's motion for summary judgment on the
13 single, incidental statement that in essence stated the teaching of creationism in a high
14 school biology class was "religious, superstitious nonsense." Thus, with this ruling it
15 has become apparent to Defendants' counsel that Dr. Corbett is entitled to qualified
16 immunity; however, that defense was not asserted in the answer filed on behalf of Dr.
17 Corbett. Thus, a modification to the scheduling order and leave to amend Defendants'
18 answer is sought and should be granted.

19 **2.    GOOD CAUSE EXISTS FOR AMENDING THE SCHEDULING ORDER**

20       The Scheduling Order set August 17, 2008 as the deadline for filing amended
21 pleadings and set a deadline of January 28, 2009 for hearing dispositive motions.
22 Subsequently, the law and motion cut off date was extended to March 30, 2009 by this
23 Court's order dated February 6, 2009. Now, Defendants bring this motion seeking to
24 extend the deadlines so that this Court can hear and determine Defendants' request to
25 amend their answer and for this Court to determine the qualified immunity defense in
26 Dr. Corbett's favor.

27       Federal Rules of Civil Procedure, Rule 16(b)(4) provides that "[a] schedule may
28 be modified only for good cause and with the judge's consent." (See also, <u>Johnson v.</u>

1 <u>Mammoth Recreations, Inc.</u>, 975 F. 2d 604, 608 (9th Cir. 1992) [stating that
2 scheduling orders entered before the final pretrial conference may be amended upon a
3 showing of "good cause"]) The "good cause" standard is met if the party seeking the
4 amendment shows diligence. (<u>Ibid</u>.) Factors to be considered include whether matters
5 that were not, and could not have been, foreseeable at the time of the scheduling
6 conference caused the need for amendment and whether the moving party was diligent
7 in seeking amendment once the need to amend became apparent. (<u>Ibid.</u>)

8      If the trial court determines that refusal to allow a modification of a pre-trial
9 order could result in injustice, while allowing the modification would cause no
10 substantial injury to the opponent and no more than a slight inconvenience to the
11 court, modification is appropriate. (See, <u>United States v. First Nat. Bank of Circle</u>, 652
12 F.2d 882, 887 (9th Cir. 1981)) If good cause is found, then the court turns to Rule 15
13 to determine whether the amendment sought should be granted. (<u>Johnson v. Mammoth</u>
14 <u>Recreations, Inc.</u>, <u>supra</u>, 975 F.2d at 608)

15      Here, good cause justifies the amending of the Scheduling Order. As shown
16 below and in the accompanying declaration of Daniel K. Spradlin, Defendants have
17 been diligent throughout each stage of this litigation.

18      As noted above, throughout this litigation Farnan has asserted that "the
19 gravamen of [his] case was and remains the barrage of religious hostility expressed by
20 Dr. Corbett throughout the Fall 2007 semester during his Advanced Placement
21 European History class." This case at no time "concern[ed] a few incidental
22 statements of a teacher that may periodically reflect upon the teacher's personal
23 beliefs" but concerned Dr. Corbett's alleged "continual and incessant actions."

24      Yet, on May 1, 2009, this Court found that Dr. Corbett did not engage in a
25 continual and incessant barrage of religious hostility. Instead, this Court determined
26 that Dr. Corbett violated the Establishment Clause when he made the single statement
27 "religious, superstitious nonsense." The Court found that no other statement attributed
28 to Dr. Corbett during the AP European History course violated the Establishment

WOODRUFF, SPRADLIN & SMART ATTORNEYS AT LAW COSTA MESA

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1    Clause and that there was no evidence presented sufficient to establish that Dr. Corbett

2    had a pattern and practice of violating the Establishment Clause.

3    It is because of this ruling that it has become apparent that Dr. Corbett is

4    entitled to a determination of qualified immunity in his favor. While the Court has

5    held that the single statement by Dr. Corbett violated the Establishment Clause, in

6    2007 the law was not established that a single statement by a teacher made during one

7    lecture given in the course of a year-long class could trigger an Establishment Clause

8    violation. Accordingly, it did not become apparent that Dr. Corbett would be entitled

9    to a qualified immunity defense until the Court's ruling on the parties' motions for

10   summary judgment on May 1, 2009. As a direct result of the Court's May 1, 2009

11   ruling, Defendants now seek leave to amend the scheduling order so that this Court

12   may hear and rule on Defendants' motion to amend their answer to include qualified

13   immunity as an affirmative defense. As shown by the accompanying declaration of

14   Daniel K. Spradlin, Defendants have been diligent in defending this action and have

15   not unreasonably delayed in bringing to Farnan's and this Court's attention the need to

16   amend the answer as soon as such need became apparent and necessary. Based on this

17   Court's May 1, 2009 and July 13, 2009 rulings, Defendants now move for an order

18   amending the Scheduling Order so that this Court may consider and rule on

19   Defendants' motion to amend their answer and motion for determination of qualified

20   immunity.

21   **3.   THE FEDERAL RULES OF CIVIL PROCEDURE REQUIRE THAT**

22   **LEAVE TO AMEND BE "FREELY GIVEN"**

23   Once the Court finds good cause under Rule 16 for amending the scheduling

24   order, the Court then turns to Rule 15 to determine whether the amendment sought

25   should be granted. (See, Johnson v. Mammoth Recreations, Inc., supra, 975 F.2d at

26   608)

27   Rule 15(a) of the Federal Rules of Civil Procedure provides that leave of court

28   is required to amend any pleading more than 20 days after that pleading is served;

8

however, Rule 15(a) expressly provides that such leave "shall be freely given when justice so requires." Regarding Rule 15(a), the United States Supreme Court in Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), held that "this mandate *is to be heeded*." (Emphasis added) Indeed, the United States Supreme Court and the Ninth Circuit have repeatedly reaffirmed that leave to amend is to be granted with extreme liberality. (See for example, Ibid [leave to amend should be freely given]; U.S. v. Webb, 655 F.2d 977, 979 (9th Cir. 1981) [courts should be guided by the policy favoring decisions on the merits "rather than on the pleadings or technicalities"]; 3-15 J. Moore, Moore's Federal Practice ¶ 15.14 (3d ed. 2008) ["A liberal, pro-amendment ethos dominates the intent and judicial construction of Rule 15(a)"])

The decision to grant or deny leave to amend lies within the discretion of the district court. (Foman v. Davis, supra, 371 U.S. at 182) In Foman, the plaintiff sought to amend her complaint after the district court entered judgment dismissing the complaint. In holding that the district court abused its discretion when it refused to grant the requested leave to amend, the Foman court stated:

> "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" (Ibid.)

The Court continued that:

> ". . . outright refusal to grant the leave without justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." (Ibid.)

///

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1    Leave to amend should be granted unless the amendment would cause prejudice

2 to the opposing party, is sought in bad faith, is futile, or creates undue delay. (<u>Ascon

3 Properties, Inc. v. Mobil Oil Company</u>, 866 F.2d 1149, 1160 (9th Cir. 1989)) The

4 Ninth Circuit has held that mere delay in seeking leave to amend is not a sufficient

5 basis for denying a motion to amend.  (<u>Morongo Band of Mission Indians v. Rose</u>,

6 893 F.2d 1074, 1079 (9th Cir. 1990) [finding that even a two-year delay is "not alone

7 enough to support denial"])

8       **A.    <u>The Amendment is Not Sought in Bad Faith</u>**

9       In determining whether an amendment is sought in bad faith, courts have

10 inquired whether the party seeking amendment has previously engaged in dilatory

11 tactics and have evaluated the value of the proposed amendment. (See, <u>Thornton v.

12 McClatchy Newspapers, Inc.</u>, 261 F.3d 789, 799 (9th Cir. 2001) [magistrate's finding

13 of bad faith based on plaintiff's history of dilatory tactics during the proceedings and

14 the doubtful value of the proposed amendment])

15      Here, Defendants are raising the qualified immunity defense at the first

16 practicable moment. The qualified immunity defense was not available to Defendants

17 until the court's ruling on May 1, 2009, when this Court determined that Dr. Corbett

18 violated the Establishment Clause when Dr. Corbett stated "religious, superstitious

19 nonsense" during a discussion about the lawsuit filed against CUSD, Dr. Corbett and

20 others by former biology teacher John Peloza. Mr. Peloza refused to teach the state

21 mandated curriculum (the theory of evolution) but instead taught creationism in the

22 classroom.  This ruling, as explained below, rendered the qualified immunity defense

23 available to Defendants for the first time in this litigation.

24      As set forth in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d

25 396 (1982), the qualified-immunity defense "shield[s] [government agents] from

26 liability for civil damages insofar as their conduct does not violate clearly established

27 statutory or constitutional rights of which a reasonable person would have known."

28 (<u>Id.</u> at 818; see also, <u>Behrens v. Pelletier</u>, 516 U.S. 299, 305-306, 116 S.Ct. 834, 133

645599.1

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

L.Ed.2d 773 (1996))

Under <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), two inquiries are to be made in determining whether a public official is entitled to qualified immunity. The first is whether the alleged acts, when construed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right. (<u>Id.</u> at 200-201) If no constitutional right was violated even under the plaintiff's allegations, the official is entitled to judgment; however, if a constitutional violation could be established under a favorable view of the evidence submitted, the court must move to the second step in the analysis.

The second step involves an inquiry into whether the constitutional right was clearly established and "must be undertaken in light of the specific context of the case, not as a broad general proposition." (<u>Ibid.</u>) Quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the <u>Saucier</u> court stated that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." (<u>Saucier v. Katz</u>, <u>supra</u>, 533 U.S. at 202) The inquiry on this prong is not whether a particular right is established in a vacuum but whether it was established on the specific facts of a particular case. (<u>Id.</u> at 202 [the court must find that the right was clearly established in light of the specific facts of a particular case such that "a reasonable official would understand that what he is doing violates that right")

Under qualified immunity, public employees remain immune as long as their actions do not violate clearly established [federal] statutory, or constitutional rights of which a reasonable person would have known. (<u>Harlow v. Fitzgerald</u>, <u>supra</u>, 457 U. S. at 818-819 [allegations of malice are insufficient to overcome application of qualified immunity]; see also, <u>Anderson v. Creighton</u>, 483 U. S. 635, 640-641 (1987) [an official's subjective belief is irrelevant; court applies an objective standard])

When this Court ruled on May 1, 2009, it determined the first prong of the inquiry, i.e., Dr. Corbett violated the Establishment Clause when he made the single statement during one lecture that creationism was "religious, superstitious nonsense."

11

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1   This determination triggered, for the first time, the possibility of a qualified immunity

2   defense.

3          Up until the Court rendered its decision, Farnan was contending that Dr.

4   Corbett made anti-Christian or anti-religious comments on a daily basis throughout

5   the 2007 semester and that anti-Christian comments essentially were the theme of Dr.

6   Corbett's lectures.  Farnan clearly stated that the gist of his action was the "barrage of

7   religious hostility" expressed throughout the Fall 2007 semester and that his action did

8   not concern "a few incidental statements" of Dr. Corbett.

9          While case law did exist in 2007 that would seem to support Farnan's claim that

10  a curriculum or class theme based on anti-Christian or anti-religious teachings could

11  be a violation of the Establishment Clause no such case law existed at that time that a

12  single comment by a teacher during a year-long course would be such a violation.

13  Thus, if Farnan's contentions were accepted as true, it did not appear that a viable

14  qualified immunity defense existed.

15         This Court's ruling, however, is not based on Dr. Corbett making anti-Christian

16  or anti-religious comments on a daily basis such that it was a theme of Dr. Corbett's

17  AP European History course. Instead, this Court has held that a single comment made

18  during a single lecture is sufficient to trigger an Establishment Clause violation.  It is

19  this ruling that now requires this Court to decide the second prong of the qualified

20  immunity defense. As explained here and in Defendants' concurrently filed motion for

21  determination, the qualified immunity defense was not available until the Court's

22  ruling on May 1, 2009.  Following the Court's ruling, Defendants diligently brought

23  this matter to the Court's attention as quickly as possible.  Defendants' request for

24  leave to amend was motivated by the Court's ruling, not by an interest in delaying the

25  proceedings.

26  **B.    The Amendment is not Futile**

27         Where the legal basis for an amendment is tenuous, futility supports the refusal

28  to grant leave to amend. (<u>Morongo Band</u>, <u>supra</u>, 893 F.2d at 1079)  While Farnan

12

may argue is that the proposed amendment has no value because Farnan is seeking only nominal damages against Dr. Corbett, case law does not support this conclusion. In addition to barring a claim for nominal damages, the qualified immunity defense also bars claims for damages such as costs and attorney's fees.

> "A question has been presented in this appeal about whether the monetary damages which the defense of qualified immunity bars include plaintiffs' claims for costs, expenses of litigation, and attorneys' fees. [Footnote omitted] The answer is 'yes.' We hold that, for qualified immunity purposes, the term 'damages' includes costs, expenses of litigation, and attorneys' fees claimed by a plaintiff against a defendant in the defendant's personal or individual capacity. . . . [¶]The policy that supports qualified immunity-especially removing for most public officials the fear of personal monetary liability-would be undercut greatly if government officers could be held liable in their personal capacity for a plaintiff's costs, litigation expenses, and attorneys' fees in cases where the applicable law was so unsettled that defendants, in their personal capacity, were protected from liability for other civil damages." (D'Aguanno v. Gallagher, 50 F.3d 877, 881 (11th Cir. 1995))

As such, the requested amendment would not be futile. Qualified immunity now appears to provide a complete defense to Farnan's claims due to this Court's May 1st ruling. In fact, an argument could be made that a request for leave to amend made *prior* to the Court's May 1st ruling most likely would have been considered legally tenuous in light of Farnan's allegations up until that time. It is this Court's May 1st ruling that supports the viability of the proposed amendment and renders this request anything but futile.

## C.     The Amendment will not Cause Undue Prejudice to Farnan

Regarding the "prejudice" element, it is the opposing party who has the burden of demonstrating such prejudice. (See, In re Circuit Breaker Litigation, 175 F.R.D.

13

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

547, 551 (C.D. Cal. 1997)) The prejudice demonstrated *must be substantial*. (Morongo Band of Mission Indians v. Rose, supra, 893 F.2d at 1079) Prejudice is the touchstone inquiry under Rule 15(a). (Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003)) "Absent prejudice, or a strong showing of any of the remaining factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." (Ibid.)

No prejudice will result to Farnan if the requested amendment is allowed. The parties already have engaged in significant discovery and filed numerous motions. If amendment is allowed here, no further discovery will be necessary and no delay will result.

First, Farnan has known since April 28, 2008 that a qualified immunity defense could be asserted in this matter. The Union Intervenors' answer to Farnan's first amended complaint asserted qualified immunity as an affirmative defense. (See, Union Intervenors' addendum to the joint proposal for disposition of the equitable and other remaining issues, filed May 22, 2009 and the Union Intervenors' answer filed with this Court on April 28, 2008) Accordingly, Farnan has been on notice for over one year that the qualified immunity defense would be asserted by the Union Intervenors on Dr. Corbett's behalf and had ample opportunity to conduct discovery regarding that defense if he so desired.

Second, contrary to Farnan's prior contentions, Farnan will not be required to conduct further discovery if leave to amend is granted. Previously, Farnan asserted that if leave to amend is granted Farnan will need to investigate "into the knowledge and intent of Dr. Corbett with regard to the constitutional violation to combat the affirmative defense of qualified immunity." (Joint proposal for disposition of the equitable and other remaining issues, pp. 9-10) Farnan is incorrect.

The determination of whether Dr. Corbett is entitled to a qualified immunity defense is not based on a subjective standard. Rather, under the second prong of the test now at issue, a public official can be liable for a constitutional violation "only if

14

'the contours of the right [violated are] sufficiently clear that a *reasonable* official would understand that what he is doing violates that right'." (United States v. Lanier, 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)) (Emphasis added)

Under qualified immunity, public employees remain immune as long as their actions do not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known. (Harlow v. Fitzgerald, supra, 457 U. S. at 817-818 [allegations of malice are insufficient to overcome application of qualified immunity]; see also, Anderson v. Creighton, supra, 483 U.S. at 640-641 [an official's subjective belief is irrelevant; court applies an objective standard])

Thus, Dr. Corbett's subjective belief is irrelevant because this Court is required to apply an objective standard. (See, Anderson v. Creighton, supra, 483 U.S. at 640-641)) As such, there will be no need to conduct further discovery to determine the knowledge and intent of Dr. Corbett should leave to amend be granted and any claimed prejudice to Farnan on this basis is inaccurate.

**D.    The Amendment will not Create Undue Delay**

The Ninth Circuit has held that mere delay in seeking leave to amend is not a sufficient basis for denying a motion to amend. (Morongo Band of Mission Indians v. Rose, supra, 893 F.2d at 1079) In Morongo Band of Mission Indians, while the court did deny leave to amend, it did so based on reasons other than mere delay. The court found that the opposing party would be prejudiced if the amendment were allowed because permitting the new claims to be raised in the amended complaint would have greatly altered the nature of the litigation and would have required the defendants to undertake an entirely new course of defense. (Ibid.) These facts, however, do not exist here.

As discussed previously, no further discovery would be required in order to determine the viability of the qualified immunity defense. The defense is based on an objective standard, not what Dr. Corbett believed at the time; therefore, further discovery would be without merit. If anything, the consideration of the qualified

15

immpunity defense will expedite this action. If Farnan's claim is barred by the defense, the issue can be resolved now and the necessity of further consideration regarding damages or attorney's fees will be obviated.

## 4. **CONCLUSION**

In light of the above, this Court should grant Defendants' request to amend the Scheduling Order and should grant Defendants leave to file an amended answer asserting qualified immunity as an affirmative defense, deeming the answer attached as Exhibit A filed and served as of the date of the hearing on this motion.

DATED: July 24, 2009          WOODRUFF, SPRADLIN & SMART, APC


By: _____
DANIEL K. SPRADLIN
ROBERTA A. KRAUS
Attorneys for Defendants CAPISTRANO
UNIFIED SCHOOL DISTRICT and DR.
JAMES CORBETT

645599.1

# DECLARATION OF DANIEL K. SPRADLIN

I, Daniel K. Spradlin, declare as follows:

1.     I am an attorney admitted to practice law in the State of California and the United States District Court for the Central District of California. I am a director with the law firm of Woodruff, Spradlin & Smart, counsel of record for Defendants Capistrano Unified School District ("CUSD") and Dr. James Corbett (collectively "Defendants"). As the primary handling attorney for this litigation, I have reviewed the pleadings and files maintained by my office in connection with this case, including the pleadings, discovery files, and materials relating to this incident. If called as a witness, I could and would competently testify to the following facts:

2.     On June 19, 2008, this Court signed the Scheduling Order in this matter. The Scheduling Order set August 17, 2008 as the deadline for filing amended pleadings and set a deadline of January 28, 2009 for hearing dispositive motions. Subsequently, the law and motion cut off date was extended to March 30, 2009 by this Court's order dated February 6, 2009.

3.     On December 13, 2007, Farnan filed his complaint against CUSD and Dr. Corbett seeking damages and injunctive relief. A first amended complaint subsequently was filed and Defendants answered the first amended complaint on March 19, 2008. On April 28, 2008, the motion of Intervenors, CALIFORNIA TEACHERS ASSOCIATION/NEA; and CAPISTRANO UNIFIED EDUCATION ASSOCIATION ("Union Intervenors") was granted and the Union Intervenors' answer to Farnan's first amended complaint was filed. In their answer the Union Intervenors asserted the qualified immunity defense on Dr. Corbett's behalf. Farnan had ample opportunity to conduct discovery on all affirmative defenses raised in the Union Intervernors' answer to Farnan's first amended complaint.

4.     Because of the way that Farnan postured his case, an affirmative defense on the basis of qualified immunity was not asserted on Dr. Corbett's behalf. For example, in his first amended complaint, Farnan asserted: "On a regular basis during

17

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1    the Fall 2007 semester . . ." (4:7-11); "Parents and/or students have complained to the

2    District for many years regarding Dr. Corbett's religious hostility expressed in his

3    classroom" (9:26-27); and "Dr. Corbett continues to spend a large portion of class

4    time . . . , he clearly demonstrates hostility towards religion . . .", "As a result of his

5    ongoing comments . . ." (10:3-7). Additionally, Farnan made the following assertions

6    in his opposition to Defendants' motion to dismiss: "statements made by Dr. Corbett

7    are continual and incessant" (10:14); "continual and incessant disapproval of religion"

8    (10:23); "For months Chad Farnan sat in an AP European History class . . . learning . .

9    . about Dr. Corbett's own propagation of a 'religion of secularism'" (12:11-14); and

10   "When taken together, [Dr. Corbett's comments] are clearly anti-Christian diatribes"

11   (15:12-13). In fact, when this Court denied Defendants' motion to dismiss, it noted

12   that the gist of Farnan's claim against Defendants is based on Farnan's claim that his

13   rights were violated by a "practice and policy hostile toward religion and favoring

14   irreligion over religion." (Court's minute order denying motion to dismiss, ¶2)

15          5.    In an effort to learn the basis of Farnan's contentions against Defendants,

16   this office propounded written discovery, including interrogatories and demands for

17   production of documents, on Farnan. Farnan also propounded written discovery on

18   CUSD and Dr. Corbett. Attorneys for all parties took and completed numerous

19   depositions in this matter, including depositions of parties and percipient witnesses.

20          6.    In his interrogatory responses, Farnan asserted: "Throughout the Fall

21   2007 semester, Dr. Corbett made numerous statements regarding Christianity and

22   religion generally that expresses a viewpoint that is derogatory, disparaging, and

23   belittling regarding religion and Christianity in particular. . . . While there are

24   individual comments that are particularly offensive and expressive of said viewpoints,

25   those and all of his comments must be taken in context of the entire lecture and class

26   environment . . ." (6:16-25 and 7:20-28)

27          7.    When the parties filed their cross-motions for summary judgment there

28   was nothing in Farnan's moving or opposing papers that alerted Defendants that

                                            18

Farnan was now contending that a single statement made by Dr. Corbett violated the Establishment Clause. Farnan continued to posit that it was the sum total of the statements – the "constant barrage" of statements – that violated the Establishment Clause. Farnan continued to assert in his papers as follows:

- "Plaintiffs brought this action with the intent to quell the religious hostility that has germinated for many years in Dr. Corbett's public classroom at Capistrano Valley High School" (1:2-4); "numerous hostile comments of Dr. Corbett" (4:4-5); "the Court must inquire into the purpose for the overreaching theme established by Dr. Corbett's lectures" (6:6-7); "[Dr. Corbett] states it many times, and in many ways, both indirectly and directly" (6:16-17); "Dr. Corbett is using his bully pulpit to spew his propaganda . . ." (8:12-13); "Dr. Corbett's statements regarding religion and Christianity, both in Chad's class and other classes, send primarily a message of disapproval of religion" (9:2-4); "Defendants' actions fail the third prong of the Lemon test because the statements made by Dr. Corbett are continual and incessant, and the School District has done nothing to lessen them" (9:18-20); *"This case does not concern a few incidental statements of a teacher that may periodically reflect upon the teacher's personal beliefs. Instead, it concerns Dr. Corbett's continual and incessant actions . . ."* (10:14-16; emphasis added); and "When applying the correct standard, and reviewing all of Dr. Corbett's comments instead of singling out a few comments . . ." (14:24-26);[4]

- "[T]eachers, including [Dr. Corbett] violate the Establishment Clause when they use the classroom to *repeatedly express* disapproval of religion, religious faith, and the resulting worldviews" (1:6-8; emphasis added); "Defendants' decision to 'teach' anti-Christian themes" (15:8-9); "barrage of hostility aimed at Dr. Corbett's students over the years past" (17:16-17); "the statements of Dr.

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

---

[4] Farnan's opposition to Defendants' motion for summary judgment.

19

Corbett are continual and incessant" (18:3-4);[5]

- "Dr. James Corbett spent a significant amount of class time discussing topics and issues not relevant to European history" (2:19-20); "On a regular basis during the fall 2007 semester, Dr. Corbett discussed a wide variety of topics not related to Advanced Placement European History" (3:3-4); "While teaching the subject of the class and while discussing various other topics, Dr. Corbett made statements and expressed viewpoints that were derogatory, disparaging, and belittling regarding religion and Christianity in particular" (3:5-9); "These comments were not limited to one particular day, but instead occurred on most days that I was in his classroom" (3:10-11); "Dr. Corbett's anti-Christian viewpoints are well-known by the students at my high school as they are often presented through comments he makes during class" (3:12-14); "Dr. Corbett made many comments regarding his personal bias against Christianity" (3:15-16); "When Dr. Corbett was talking to my class, he regularly included his own ideas about God and religion" (3:16-17); "As a result of his ongoing comments . . ." (3:19-20);[6]

- "*The gravamen of Plaintiffs' case was and remains the barrage of religious hostility expressed by Dr. Corbett throughout the Fall 2007 semester* during his Advanced Placement European History class" (1:4-6; emphasis added);[7] and

- "Dr. Corbett's habit or routine practice of making negative or hostile comments about religion and Christianity . . ." (3:21-22)[8]

8.    After this Court made its May 1, 2009 ruling on the parties' motions for summary judgment this office diligently began researching whether a qualified

---

[5] Farnan's memorandum of points and authorities in support of motion for summary judgment.

[6] Declaration of Chad Farnan in support of Farnan's motion for summary judgment.

[7] Farnan's reply to Defendants' opposition to Farnan's motion for summary judgment.

[8] Farnan's response to Defendants' objections to Farnan's evidence submitted by Farnan in support of his motion for summary judgment.

645599.1

WOODRUFF, SPRADLIN & SMART
ATTORNEYS AT LAW
COSTA MESA

immunity defense was now available to Dr. Corbett. After determining that Dr. Corbett now was entitled to a finding of qualified immunity on his behalf, this office engaged in a meet and confer conference with Farnan's counsel and with counsel for the Union Intervenors in order to complete the Court ordered joint proposal for disposition of equitable and other issues. In that conversation I advised all counsel that this office would seek a determination of qualified immunity on Dr. Corbett's behalf. That issue was again raised and partially briefed in Defendants' portion of the joint proposal of counsel filed with this Court on May 22, 2009.

9. The parties to this action have been diligent in conducting discovery in this matter and in raising, researching and addressing relevant issues. As soon as this office determined that the qualified immunity defense was a viable defense following this Court's ruling on the parties' motions for summary judgment this office was diligent in advising the other parties and this Court of Defendants' intent to raise this issue and to seek leave to amend their answer.

10. A copy of Defendants' proposed amended answer is attached as Exhibit A.

I declare under penalty of perjury under the laws of the United States that the foregoing facts are true and correct, and if called upon to do so, I could and would competently testify thereto.

Executed on July 27, 2009, in Costa Mesa, California.

DANIEL K. SPRADLIN

645599.1

# EXHIBIT A

DANIEL K. SPRADLIN - State Bar No. 82950
dspradlin@wss-law.com
ROBERTA A. KRAUS – State Bar No. 117658
bkraus@wss-law.com
WOODRUFF, SPRADLIN & SMART, APC
555 Anton Boulevard, Suite 1200
Costa Mesa, California 92626-7670
Telephone: (714) 558-7000
Facsimile: (714) 835-7787

Attorneys for Defendants CAPISTRANO UNIFIED SCHOOL
DISTRICT and DR. JAMES CORBETT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD FARNAN, a minor, by and through his parents BILL FARNAN and TERESA FARNAN,<br><br>        Plaintiff,<br><br>v.<br><br>CAPISTRANO UNIFIED SCHOOL DISTRICT; DR. JAMES CORBETT, individually and in his official capacity as an employee of Capistrano Unified School District; and DOES 1 through 20, inclusive,<br><br>        Defendants.<br>─────────────────────────<br>CALIFORNIA TEACHERS ASSOCIATION/NEA; and CAPISTRANO UNIFIED EDUCATION ASSOCIATION,<br><br>        Union Intervenors/Defendants. | CASE NO.: SACV07-1434-JVS (ANx)<br><br>BEFORE THE HONORABLE JAMES V. SELNA; COURTROOM 10C<br><br>**[PROPOSED] FIRST AMENDED ANSWER OF DEFENDANTS CAPISTRANO UNIFIED SCHOOL DISTRICT AND DR. JAMES CORBETT TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY** |

///

///

///

///

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1

**EXHIBIT A**

Defendants CAPISTRANO UNIFIED SCHOOL DISTRICT and DR. JAMES CORBETT answer the first amended complaint on file herein as follows:

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

1.      Answering Paragraphs 1, 2, 3, 4, 6, 9, 12 and 13 of the first amended complaint, these answering Defendants have no information or belief sufficient to enable them to answer the allegations contained in said Paragraphs, and basing their denial on said grounds, deny generally and specifically, all and singular, each and every allegation contained therein.

2.      Answering Paragraph 5 of the first amended complaint, these answering Defendants based upon information and belief admit that Chad Farnan is a minor and was a student at Capistrano Valley High School at the times alleged in the complaint. Except as so admitted, these answering Defendants deny the balance of the allegations on lack of information and belief.

3.      Answering Paragraph 7 of the first amended complaint, these answering Defendants admit the allegations contained therein.

4.      Answering Paragraph 8 of the first amended complaint, these answering Defendants admit that Dr. James Corbett was at all times relevant to this lawsuit an employee and teacher for the Capistrano Unified School District and that on the face of the first complaint Plaintiff is suing Dr. Corbett in his individual and official capacity.

5.      Answering Paragraph 10 of the first amended complaint, these answering Defendants admit the allegations contained therein.

6.      Answering Paragraph 11 of the first amended complaint, these answering Defendants admit that they are informed and believe that Chad Farnan is a sophomore at Capistrano Valley High School. Except as so admitted, these answering Defendants deny the balance of the allegations on lack of information and belief.

7.      Answering Paragraph 14 of the first amended complaint, these answering Defendants admit that on a regular basis in the fall 2007 semester Dr. Corbett

2

**EXHIBIT A**

641083.1

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1   discussed a wide variety of topics to enrich his students in the instruction of Advanced

2   Placement European History. These answering Defendants further admit that

3   unbeknownst to Dr. Corbett statements may have been made which were intended to

4   provoke discussion which were beyond the comprehension level of Plaintiff Chad

5   Farnan. Except as so admitted, these Defendants deny specifically the remaining

6   allegations contained in Paragraph 14.

7       8.   Answering Paragraph 15 of the first amended complaint, these answering

8   Defendants admit, based upon information and belief, that the Plaintiff has apparently

9   misunderstood and/or misconstrued a number of comments made by Dr. Corbett in his

10  classroom. As to the specific allegations, Defendants are informed and believe that

11  Plaintiff Chad Farnan surreptitiously recorded portions of Dr. Corbett's lectures and

12  classroom discussion all in violation of California Education Code section 51512, and

13  in violation of California Penal Code section 632. These answering Defendants further

14  allege that Plaintiff edited and/or extracted portions of such transcripts to convey Dr.

15  Corbett's meaning in classroom discussion in a false light. Defendants lack

16  information and belief as to the authenticity of the specific comments, and note that

17  they are taken out of context, and therefore deny the allegations contained therein until

18  the completion of discovery.

19      9.   Answering Paragraph 17 of the first amended complaint, these answering

20  Defendants deny generally and specifically, all and singular, each and every allegation

21  contained therein, and more particularly deny that by reason of the premises alleged,

22  or for any cause whatever, Plaintiff suffered injuries or damages as alleged, or any

23  other sum or sums, or at all.

24      10.  Answering Paragraph 18 of the first amended complaint, these answering

25  Defendants have no information or belief sufficient to enable them to answer the

26  allegations contained in said Paragraphs, and basing their denial on said grounds, deny

27  generally and specifically, all and singular, each and every allegation contained

28  therein.

3

**EXHIBIT A**

641083.1

1     11.    Answering Paragraph 19 of the first amended complaint, these answering
2 Defendants admit that Dr. Corbett was acting in the course and scope of his
3 employment and except as so admitted, deny the balance of the allegations.

4     12.    Answering Paragraphs 20 and 21 of the first amended complaint, these
5 answering Defendants deny generally and specifically, all and singular, each and
6 every allegation contained therein, and more particularly deny that by reason of the
7 premises alleged, or for any cause whatever, Plaintiff suffered injuries or damages as
8 alleged, or any other sum or sums, or at all.

## AS TO THE FIRST CLAIM FOR RELIEF

10     13. Answering Paragraph 21 [sic] of the first amended complaint, these
11 answering Defendants refers to their answer to the allegations incorporated by
12 reference into said Paragraph and incorporate said answer herein by reference as
13 though fully set forth and for the same effect.

14     14.    Answering Paragraphs 22, 23, 24 and 25 of the first amended complaint,
15 these answering Defendants deny generally and specifically, all and singular, each and
16 every allegation contained therein, and more particularly deny that by reason of the
17 premises alleged, or for any cause whatever, Plaintiff[suffered injuries or damages as
18 alleged, or any other sum or sums, or at all.

## FIRST AFFIRMATIVE DEFENSE TO EACH CLAIM FOR RELIEF

20     As an affirmative defense, Defendants allege at all times alleged herein Dr.
21 Corbett acted in an objectively reasonable manner and is entitled to the qualified
22 immunity of good faith as a defense to actions brought as civil rights violations under
23 42 U.S.C. section 1983.

24 ///
25 ///
26 ///
27 ///
28 ///

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

4

**EXHIBIT A**

1   WHEREFORE, Defendants pray that Plaintiff take nothing by way of his

2   complaint and that said Defendants be dismissed with costs herein incurred and for

3   such other and further relief as the Court deems just and proper.

4   DATED: July 24, 2009              WOODRUFF, SPRADLIN & SMART, APC

5

6                                     By:

7                                     DANIEL K. SPRADLIN
                                      ROBERTA A. KRAUS
8                                     Attorneys for Defendants CAPISTRANO
                                      UNIFIED SCHOOL DISTRICT and DR.
9                                     JAMES CORBETT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

WOODRUFF, SPRADLIN & SMART ATTORNEYS AT LAW COSTA MESA

641083.1

## DEMAND FOR JURY TRIAL

Defendants CAPISTRANO UNIFIED SCHOOL DISTRICT and DR. JAMES
CORBETT hereby request a trial by jury.

DATED: July 24, 2009          WOODRUFF, SPRADLIN & SMART, APC

By: _____
       DANIEL K. SPRADLIN
       ROBERTA A. KRAUS
       Attorneys for Defendants CAPISTRANO
       UNIFIED SCHOOL DISTRICT and DR.
       JAMES CORBETT

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

**EXHIBIT A**

641083.1

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am over the age of 18 and not a party to the within action; I am employed by WOODRUFF, SPRADLIN & SMART in the County of Orange at 555 Anton Boulevard, Suite 1200, Costa Mesa, CA 92626-7670.

On July 24, 2009, I served the foregoing document(s) described as **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ORDER AMENDING SCHEDULING ORDER AND TO AMEND ANSWER TO ASSERT QUALIFIED IMMUNITY AS AN AFFIRMATIVE DEFENSE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DANIEL K. SPRADLIN; [PROPOSED] FIRST AMENDED ANSWER OF DEFENDANTS CAPISTRANO UNIFIED SCHOOL DISTRICT AND DR. JAMES CORBETT TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY AS EXHIBIT A**

☒ by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list:

☐ **(BY MAIL)** I placed said envelope(s) for collection and mailing, following ordinary business practices, at the business offices of WOODRUFF, SPRADLIN & SMART, and addressed as shown on the attached service list, for deposit in the United States Postal Service. I am readily familiar with the practice of WOODRUFF, SPRADLIN & SMART for collection and processing correspondence for mailing with the United States Postal Service, and said envelope(s) will be deposited with the United States Postal Service on said date in the ordinary course of business.

☐ **(BY OVERNIGHT DELIVERY)** I placed said documents in envelope(s) for collection following ordinary business practices, at the business offices of WOODRUFF, SPRADLIN & SMART, and addressed as shown on the attached service list, for collection and delivery to a courier authorized by _____ to receive said documents, with delivery fees provided for. I am readily familiar with the practices of WOODRUFF, SPRADLIN & SMART for collection and processing of documents for overnight delivery, and said envelope(s) will be deposited for receipt by _____ on said date in the ordinary course of business.

☐ **(BY FACSIMILE)** I caused the above-referenced document to be transmitted to the interested parties via facsimile transmission to the fax number(s) as stated on the attached service list.

☐ **(BY PERSONAL SERVICE)** I delivered such envelope(s) by hand to the offices of the addressee(s).

☒ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct.

Executed on July 24, 2009 at Costa Mesa, California.

Laura F. Perez

566895.1

## CHAD FARNAN et al. v. CAPISTRANO UNIFIED SCHOOL DISTRICT

## USDC CASE NO. SACV07-1434-JVS (ANx))
### ASSIGNED TO: HON. JAMES V. SELNA

### ATTACHED SERVICE LIST

| | |
|---|---|
| ADVOCATES FOR FAITH AND FREEDOM<br>Jennifer L. Monk, Esq.<br>24910 Las Brisas Road, Suite 110<br>Murrieta, CA 92562<br>Telephone: (951) 304-7583<br>Facsimile: (951) 600-4996 | Attorneys for Plaintiff<br>**CHAD FARNAN, a minor, by and<br>through his parents BILL FARNAN and<br>TERESA FARNAN** |
| Michael D. Hersh, Esq.<br>CALIFORNIA TEACHERS ASSOCIATION –<br>LEGAL DEPARTMENT<br>11745 East Telegraph Rd.<br>Santa Fe Springs, CA 90670<br>Telephone: (562) 478-1410<br>Facsimile: (562) 478-1434 | Attorneys for Intervenors<br>**CALIFORNIA TEACHERS<br>ASSOCIATION and CAPISTRANO<br>UNIFIED EDUCATION<br>ASSOCIATION** |

1/6/09

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

566895.1