DANIEL K. SPRADLIN - State Bar No. 82950
dspradlin@wss-law.com
ROBERTA A. KRAUS - State Bar No. 117658
rakraus@wss-law.com
WOODRUFF, SPRADLIN & SMART, APC
555 Anton Boulevard, Suite 1200
Costa Mesa, California 92626-7670
Telephone: (714) 558-7000
Facsimile: (714) 835-7787

Attorneys for Defendants CAPISTRANO UNIFIED SCHOOL DISTRICT and DR. JAMES CORBETT

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD FARNAN, a minor, by and through his parents BILL FARNAN and TERESA FARNAN,<br><br>Plaintiff,<br><br>v.<br><br>CAPISTRANO UNIFIED SCHOOL DISTRICT; DR. JAMES CORBETT, individually and in his official capacity as an employee of Capistrano Unified School District; and DOES 1 through 20, inclusive,<br><br>Defendants.<br><br>CALIFORNIA TEACHERS ASSOCIATION/NEA; and CAPISTRANO UNIFIED EDUCATION ASSOCIATION,<br><br>Union Intervenors/Defendants. | CASE NO.: SACV07-1434-JVS (ANx)<br><br>**DEFENDANTS' MOTION FOR A DETERMINATION THAT DR. CORBETT IS ENTITLED TO QUALIFIED IMMUNITY; MEMORANDUM OF POINTES AND AUTHORITIES**<br><br>HEARINGS PENDING:<br>TYPE: Motions<br>DATE: August 31, 2009<br>TIME: 1:30 p.m.<br>COURTROOM: 10C/Judge Selna |

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 31, 2009, at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 10C of the above-entitled Court, located in the Ronald Reagan Federal Building, 411 West Fourth Street, Santa Ana, California 92701, Defendants CAPISTRANO UNIFIED SCHOOL DISTRICT

i

640660.2

("CUSD") and DR. JAMES CORBETT ("Dr. Corbett") (sometimes collectively "Defendants") will and hereby do move this Court, following its ruling on the parties' motions for summary judgment, for a determination that Dr. Corbett is entitled to qualified immunity in this matter.

This motion is based on this notice, the attached memorandum of points and authorities, the Court's order regarding the parties' motions for summary judgment, the evidence filed by the parties' in support of their motions for summary judgment, such matters of which this Court may be asked to take judicial notice, as well as the pleadings and records on file in this matter.

DATED: July 24, 2009          WOODRUFF, SPRADLIN & SMART, APC

By: _____

DANIEL K. SPRADLIN
ROBERTA A. KRAUS
Attorneys for Defendants CAPISTRANO UNIFIED SCHOOL DISTRICT and DR. JAMES CORBETT

640660.2

# TABLE OF CONTENTS

1. INTRODUCTION ..................................................................................1

    A. Background Facts .......................................................................2

2. THIS COURT SHOULD DETERMINE THE APPLICABILITY OF THE QUALIFIED IMMUNITY DEFENSE TO DR. CORBETT .................5

    A. The Right that Dr. Corbett has been Determined to have Violated was not Clearly Established in 2007 .....................................6

    B. Dr. Corbett has raised the Issue of Qualified Immunity at the First Practicable Opportunity ......................................................14

3. CONCLUSION ..................................................................................17

640660.2

WOODRUFF, SPRADLIN & SMART
ATTORNEYS AT LAW
COSTA MESA

# TABLE OF AUTHORITIES

## FEDERAL CASES

Altman v. Bedford Cent. School Dist., 245 F.3d 49 (2nd Cir. 2001)............................11

Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)............6

Behrens v. Pelletier, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)................6

Collins v. Chandler Unified School Dist., 644 F.2d 759 (9th Cir. 1981)....................11

Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)................10

Dibble v. City of Chandler, 515 F.3d 918 (9th Cir. 2008) ..............................................8

Doe v. Duncanville Ind. School District, 70 F.3d 402 (5th Cir.1995) ........................12

Edwards v. Aguillard, 482 U.S. 578, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987) ............11

Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 1266, 8 L.Ed.2d 601 (1962) ................11

Fogel v. Collins, 531 F.3d 824 (9th Cir. 2008)..............................................9, 10

Graves v. City of Coeur D'Alene, 339 F.3d 828 (9th Cir. 2003)................................15

Guzman-Rivera v. Rivera-Cruz, 98 F.3d 664 (1st Cir. 1996) ....................................14

Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ..........6, 8

Illinois ex rel. McCollum v. Board of Ed. of School Dist. No. 71,

   Champaign Cty., 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948)........................11

Krestan v. Deer Valley Unified School District No. 97, of

   Maricopa County, 561 F.Supp.2d 1078 (D. Ariz., 2008) ..........................................12

Kwai Fun Wong v. United States, 373 F.3d 952 (9th Cir. 2004)................................15

Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) ................13

Lynch v. Donnelly, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) ................12

Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ....................7

Malnak v. Yogi, 592 F.2d 197 (3d Cir. 1979) ................................................................11

Pearson v. Callahan, 555 U.S. --, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)..............7, 15

Rodis v. City, County of San Francisco, 558 F.3d 964 (9th Cir. 2009) ........................9

Rosenberger v. Rector, 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995)........12

Rudebusch v. Hughes, 313 F.3d 506 (9th Cir. 2002) ....................................................9

iv

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ..................7, 8

School Dist. of Abington Township v. Schempp, 374 U.S. 203,

    83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) ......................................................11

Shepard v. Wapello County, 303 F. Supp.2d 1004 (S.D. Iowa 2003) ..........................15

Skrtich v. Thornton, 280 F.3d 1295 (11th Cir. 2002) .....................................................14

Sonoda v. Cabrera, 255 F.3d 1035 (9th Cir.2001) ..........................................................15

Stone v. Graham, 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980) ........................11

United States v. Lanier, 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) ..........8

Van Orden v. Perry, 545 U.S. 677, 125 S.Ct. 2854, 162 L.Ed.2d 607 (2005) .............12

Walker v. Gomez, 370 F.3d 969 (9th Cir. 2004) ...............................................................9

Wallace v. Jaffree, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) ......................11

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

640660.2

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

Throughout this litigation Farnan took the position that "the gravamen of Plaintiffs' case was and remains the barrage of religious hostility expressed by Dr. Corbett throughout the Fall 2007 semester during his Advanced Placement European History class."[1] This case "does not concern a few incidental statements of a teacher that may periodically reflect upon the teacher's personal beliefs" but concerns Dr. Corbett's alleged "continual and incessant actions."[2]

Yet, on May 1, 2009, this Court found that Dr. Corbett did not engage in a continual and incessant barrage of religious hostility. Instead, this Court determined that Dr. Corbett violated the Establishment Clause when Dr. Corbett stated "religious, superstitious nonsense" during a discussion about the lawsuit filed against CUSD, Dr. Corbett and others by former biology teacher John Peloza who had refused to teach the state-mandated curriculum (the theory of evolution) but instead taught creationism in the classroom. Dr. Corbett made this single statement during the course of one lecture while teaching his year-long AP European History course. The Court found that no other statement attributed to Dr. Corbett during this year-long AP European History course violated the Establishment Clause and that there was no evidence presented sufficient to establish that Dr. Corbett had a pattern and practice of violating the Establishment Clause.

Based on this ruling, it is apparent that Dr. Corbett now is entitled to a qualified immunity defense. While this Court has held that the single statement by Dr. Corbett violated the Establishment Clause, in 2007, the law was not established that a single statement by a teacher made during one lecture given in the course of a year-long class could trigger an Establishment Clause violation.

---

[1] See, Plaintiff's reply to Defendants' opposition to Plaintiff's motion for summary judgment, 1:4-6.

[2] See, Plaintiff's opposition to Defendants' motion for summary judgment, 10:14-16.

1

WOODRUFF, SPRADLIN & SMART ATTORNEYS AT LAW COSTA MESA

## A.    Background Facts

Since the filing of his lawsuit and up through this Court's ruling on the parties' motions for summary judgment, Farnan has contended that Dr. Corbett made anti-Christian or anti-religious comments on a daily basis throughout the 2007 semester; that anti-Christian comments essentially were the theme of Dr. Corbett's lectures. According to Farnan, it was the continual and incessant comments attributed to Dr. Corbett that violated the Establishment Clause. Examples of Farnan's position in this regard are voluminous and can be found, by way of illustration, in the following documents:

(1) Farnan's first amended complaint:

- "On a regular basis during the Fall 2007 semester . . ." (4:7-11);
- "Parents and/or students have complained to the District for many years regarding Dr. Corbett's religious hostility expressed in his classroom" (9:26-27);
- "Dr. Corbett continues to spend a large portion of class time . . . , he clearly demonstrates hostility towards religion . . .", "As a result of his ongoing comments . . ." (10:3-7)

(2) Farnan's opposition to Defendants' motion to dismiss:

- "statements made by Dr. Corbett are continual and incessant" (10:14);
- "continual and incessant disapproval of religion" (10:23);
- "For months Chad Farnan sat in an AP European History class . . . learning . . . about Dr. Corbett's own propagation of a 'religion of secularism'" (12:11-14);
- "When taken together, [Dr. Corbett's comments] are clearly anti-Christian diatribes" (15:12-13)

(3) Farnan's responses to Defendants' special interrogatories, response nos. 5 and 7:

///

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

WOODRUFF, SPRADLIN<br>& SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

- "Throughout the Fall 2007 semester, Dr. Corbett made numerous statements regarding Christianity and religion generally that expresses a viewpoint that is derogatory, disparaging, and belittling regarding religion and Christianity in particular. . . . While there are individual comments that are particularly offensive and expressive of said viewpoints, those and all of his comments must be taken in context of the entire lecture and class environment . . ." (6:16-25 and 7:20-28)

(4) Plaintiff's opposition to Defendants' motion for summary judgment:

- "Plaintiffs brought this action with the intent to quell the religious hostility that has germinated for many years in Dr. Corbett's public classroom at Capistrano Valley High School" (1:2-4)

- "numerous hostile comments of Dr. Corbett" (4:4-5)

- "the Court must inquire into the purpose for the overreaching theme established by Dr. Corbett's lectures" (6:6-7)

- "[Dr. Corbett] states it many times, and in many ways, both indirectly and directly" (6:16-17)

- "Dr. Corbett is using his bully pulpit to spew his propaganda . . ." (8:12-13)

- "Dr. Corbett's statements regarding religion and Christianity, both in Chad's class and other classes, send primarily a message of disapproval of religion" (9:2-4)

- "Defendants' actions fail the third prong of the Lemon test because the statements made by Dr. Corbett are continual and incessant, and the School District has done nothing to lessen them" (9:18-20)

- *"This case does not concern a few incidental statements of a teacher that may periodically reflect upon the teacher's personal beliefs. Instead, it concerns Dr. Corbett's continual and incessant actions . . ."* (10:14-16; emphasis added)

3

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1        • "When applying the correct standard, and reviewing all of Dr. Corbett's

2        comments instead of singling out a few comments . . ." (14:24-26)

3      (6)    Plaintiff's memorandum of points and authorities in support of motion

4  for summary judgment:

5        • "[T]eachers, including [Dr. Corbett] violate the Establishment Clause

6        when they use the classroom to *repeatedly express* disapproval of

7        religion, religious faith, and the resulting worldviews" (1:6-8; emphasis

8        added)

9        • "Defendants' decision to 'teach' anti-Christian themes" (15:8-9)

10       • "barrage of hostility aimed at Dr. Corbett's students over the years past"

11       (17:16-17)

12       • "the statements of Dr. Corbett are continual and incessant" (18:3-4)

13    (7)    Declaration of Chad Farnan in support of Plaintiffs' motion for summary

14  judgment:[3]

15        • "Dr. James Corbett spent a significant amount of class time discussing

16        topics and issues not relevant to European history" (2:19-20);

17        • "On a regular basis during the fall 2007 semester, Dr. Corbett discussed a

18        wide variety of topics not related to Advanced Placement European

19        History" (3:3-4);

20        • "While teaching the subject of the class and while discussing various

21        other topics, Dr. Corbett made statements and expressed viewpoints that

22        were derogatory, disparaging, and belittling regarding religion and

23        Christianity in particular" (3:5-9)

24        • "These comments were not limited to one particular day, but instead

25        occurred on most days that I was in his classroom" (3:10-11)

26

27  [3] Many of these same assertions are also contained in Plaintiff's statement of

28  uncontroverted facts and conclusions of law in support of his motion for summary judgment. (See, for example, fact nos. 9, 10, 11, 36, 37)

640660.2

- "Dr. Corbett's anti-Christian viewpoints are well-known by the students at my high school as they are often presented through comments he makes during class" (3:12-14)

- "Dr. Corbett made many comments regarding his personal bias against Christianity" (3:15-16)

- "When Dr. Corbett was talking to my class, he regularly included his own ideas about God and religion" (3:16-17)

- "As a result of his ongoing comments . . ." (3:19-20)

(8)     Plaintiff's reply to Defendants' opposition to Plaintiff's motion for summary judgment:

- "*The gravamen of Plaintiffs' case was and remains the barrage of religious hostility expressed by Dr. Corbett throughout the Fall 2007 semester* during his Advanced Placement European History class" (1:4-6; emphasis added)

(9)     Plaintiff's response to Defendants' objections to Plaintiff's evidence submitted by Plaintiff in support of his motion for summary judgment:

- "Dr. Corbett's habit or routine practice of making negative or hostile comments about religion and Christianity . . ." (3:21-22)

This Court, itself, in denying Defendants' motion to dismiss, also noted that the gist of Farnan's claim against Defendants is based on Farnan's claim that his rights were violated by a "practice and policy hostile toward religion and favoring irreligion over religion." (Court's minute order denying motion to dismiss, ¶2)

## 2.     THIS COURT SHOULD DETERMINE THE APPLICABILITY OF THE QUALIFIED IMMUNITY DEFENSE TO DR. CORBETT

In light of this Court's May 1, 2009 ruling on Farnan's motion for summary judgment, Dr. Corbett is entitled to qualified immunity. Qualified immunity "shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

5

1  person would have known." (Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727,

2  73 L.Ed.2d 396 (1982); see also, Behrens v. Pelletier, 516 U.S. 299, 305-306, 116

3  S.Ct. 834, 133 L.Ed.2d 773 (1996))

4    A.    **The Right that Dr. Corbett has been Determined to have Violated**

5          **was not Clearly Established in 2007**

6  The United States Supreme Court has repeatedly rejected the position that

7  simply because a broad category of a right might be well established under the

8  Constitution, governmental actors who are alleged to have violated that right are not

9  entitled to qualified immunity. (See, Anderson v. Creighton, 483 U.S. 635, 638-640,

10  107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) In Anderson, an FBI agent who participated

11  in a warrantless search of the plaintiff's home while looking for a bank robbery

12  suspect asserted a right to qualified immunity on summary judgment. The court of

13  appeal denied the motion, holding that the right of persons to be protected from

14  warrantless searches unless the searching officers have probable cause and/or there are

15  exigent circumstances was clearly established at the time of the search. The Supreme

16  Court reversed, noting:

17      "[T]he right to due process of law is quite clearly established by the Due

18      Process Clause, and thus there is a sense in which any action that violates

19      that Clause (no matter how unclear it may be that the particular action is

20      a violation) violates a clearly established right. Much the same could be

21      said of any other constitutional or statutory violation. But if the test of

22      'clearly established law' were to be applied at this level of generality, it

23      would bear no relationship to the 'objective legal reasonableness' that is

24      the touchstone of Harlow. Plaintiffs would be able to convert the rule of

25      qualified immunity that our cases plainly establish into a rule of virtually

26      unqualified liability simply by alleging violation of extremely abstract

27      rights. Harlow would be transformed from a guarantee of immunity into a

28      rule of pleading. Such an approach, in sum, would destroy 'the balance

6

that our cases strike between the interests in vindication of citizens'
constitutional rights and in public officials' effective performance of their
duties, by making it impossible for officials 'reasonably to anticipate
when their conduct may give rise to liability for damages.'" (Id. at 639,
citation omitted)

The Supreme Court reiterated this view in Saucier v. Katz, 533 U.S. 194, 121
S.Ct. 2151, 150 L.Ed.2d 272 (2001), where it held that the inquiry is not whether a
particular right is established in a vacuum but whether it was established on the
specific facts of a particular case. (Id. at 202 [the court must find that the right was
clearly established in light of the specific facts of a particular case such that "a
reasonable official would understand that what he is doing violates that right").

In Saucier, the court identified two inquiries to be made in determining whether
a public official is entitled to qualified immunity. The first is whether the alleged acts,
when construed in the light most favorable to the plaintiff, show that the official's
conduct violated a constitutional right. (Id. at 200-201) If no constitutional right was
violated even under the plaintiff's allegations, the official is entitled to judgment;
however, if a constitutional violation could be established under a favorable view of
the evidence submitted, the court must move to the second step in the analysis. That
step involves an inquiry into whether the constitutional right was clearly established
and "must be undertaken in light of the specific context of the case, not as a broad
general proposition." (Ibid.)[4]

Quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271
(1986), the Saucier court stated that qualified immunity protects "all but the plainly

---

[4] More recently the United States Supreme Court held that while the sequence set
forth in Saucier is often appropriate, it should no longer be regarded as mandatory.
Instead, judges should be permitted to exercise their sound discretion in deciding
which of the two prongs of the qualified immunity analysis should be addressed first
in light of the circumstances in the particular case at hand. (Pearson v. Callahan, 555
U.S. --, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009)) The Pearson court also
recognized that the Saucier protocol, while not mandatory, often is beneficial.
(Pearson v. Callahan, supra, 129 S.Ct. at 818)

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1 incompetent or those who knowingly violate the law." (Saucier v. Katz, supra, 533

2 U.S. at 202) A public official or employee is entitled to qualified immunity even if

3 that official makes a good faith mistake about the law. (Id. at 205)

4     The inquiry on the second prong is not whether a particular right is established

5 in a vacuum. The inquiry is whether it was established on the *specific facts* of a

6 particular case. (Id. at 202) The court must find that the right was clearly established

7 in light of the specific facts of a particular case such that "a reasonable official would

8 understand that what he is doing violates that right." (Ibid.; see also, Dibble v. City of

9 Chandler, 515 F.3d 918, 930 (9th Cir. 2008) [since determining whether a "public

10 employee's speech is constitutionally protected turns on a context-intensive, case-by-

11 case balancing analysis, the law regarding such claims will rarely, if ever, be sufficient

12 'clearly established' to preclude qualified immunity"])

13     In United States v. Lanier, 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432

14 (1997), the court stated that a public official can be liable for a constitutional violation

15 "only if 'the contours of the right [violated are] sufficiently clear that a reasonable

16 official would understand that what he is doing violates that right.'" Under qualified

17 immunity, public employees remain immune as long as their actions do not violate

18 clearly established [federal] statutory or constitutional rights of which a reasonable

19 person would have known. (Harlow v. Fitzgerald, supra, 457 U. S. at 817-818

20 [allegations of malice are insufficient to overcome application of qualified immunity)

21 The Ninth Circuit recently stated:

22         "The constitutional violation must be 'clearly established' at the time of

23         the alleged misconduct. [Citation] 'The operation of this standard,

24         however, depends substantially upon the level of generality at which the

25         relevant "legal rule" is to be identified.' [Citation] '[T]he right the

26         official is alleged to have violated must have been "clearly established"

27         in a more particularized, and hence more relevant, sense: The contours of

28         the right must be sufficiently clear that a reasonable official would

8

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

understand that what he is doing violates that right.' [Citation] . . . 'The dispositive inquiry is "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."' [Citation]" (Rodis v. City, County of San Francisco, 558 F.3d 964, 969 (9th Cir. 2009))

The Ninth Circuit noted the same in Walker v. Gomez, 370 F.3d 969, 978 (9th Cir. 2004):

> "The second prong of the *Saucier* inquiry operates at a *high level of specificity*. It is *insufficient that the broad principle underlying a right is well-established.* . . . While it is well-established that racial discrimination in the assignment of prison jobs is unconstitutional, . . . it has not been clearly established that such race-based differentiation is unconstitutional in the context of a prison-wide lockdown instituted in response to gang- or race-based violence. Defendants are therefore entitled to qualified immunity." (Emphasis added; see also, Rudebusch v. Hughes, 313 F.3d 506, 518 (9th Cir. 2002) [finding that while the general rules were well enough established, "the specific contours of the law . . . were not well developed or sufficiently clear at the time"])

In another recent case – Fogel v. Collins, 531 F.3d 824 (9th Cir. 2008) – the Ninth Circuit again reiterated this view. In Fogel, an arrestee brought a section 1983 action against the police department and police officers alleging a violation of his First Amendment rights when he was arrested because of various messages painted on the back of his van. The individual officers asserted a qualified immunity defense. In analyzing this defense the court addressed the first prong of the defense, i.e., whether there was a constitutional violation. In analyzing this issue the court applied an objective standard and held that "a reasonable person would [not] foresee that the statement [on the van] would be interpreted by those to whom [Fogel] communicates the statement as a serious expression of intent to harm or assault." (Id. at 831) The

WOODRUFF, SPRADLIN & SMART
ATTORNEYS AT LAW
COSTA MESA

court also found that there virtually was no evidence that Fogel subjectively intended the speech as a true threat of serious harm. (Id. at 832) Therefore, the court concluded that the message communicated on Fogel's van was protected by the First Amendment, and that the police officers violated Fogel's First Amendment rights by arresting him, impounding the van, and requiring him to paint over the message before allowing him to retrieve the van. (Id. at 833)

The Fogel court then went on to analyze the second prong of the qualified immunity inquiry, i.e., whether the right was clearly established. As the court stated, "Our inquiry focuses on the *precise circumstances of a particular case* as well as the state of the law at the time of the alleged violation." (Ibid.; emphasis added) In making this analysis the court noted:

> "[I]n no case had a court held on identical or closely comparable facts
> that the speech was protected by the First Amendment. That is, in May
> 2004, when the officers acted, there was no reported case in which a
> person in the post-September 11 environment satirically proclaimed
> himself or herself to be a terrorist in possession of weapons of mass
> destruction." (Ibid.)

Thus, the court held that despite the officers' violation of Fogel's First Amendment rights, qualified immunity applied. (Id. at 834)

The plaintiff has the burden of proving that the rights he claims were "clearly established." (Davis v. Scherer, 468 U.S. 183, 197, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984))

Here, Farnan has not and cannot establish that the rights he claims were violated were "clearly established" under existing case law in 2007. At that time it was not clearly established that a teacher could violate the Establishment Clause by making a single statement in one lecture given during a year-long course. Cases that have discussed or held that schools have violated the Establishment Clause have looked at the *curriculum* or *theme* or ongoing conduct being challenged.

10

1    For example, in Edwards v. Aguillard, 482 U.S. 578, 107 S.Ct. 2573, 96
2    L.Ed.2d 510 (1987), the court held that a Louisiana law that proscribed the teaching of
3    evolution as part of the public school curriculum, unless accompanied by a lesson on
4    creationism, violated the Establishment Clause. Thus, Edwards involved the content
5    of the curriculum taught by state teachers during the school day.

6         In Illinois ex rel. McCollum v. Board of Ed. of School Dist. No. 71, Champaign
7    Cty., 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948), the school district excused
8    students from their normal classroom study during the regular school day to attend
9    classes taught by sectarian religious teachers, who were subject to approval by the
10   school superintendent.

11        In School Dist. of Abington Township v. Schempp, 374 U.S. 203, 83 S.Ct.
12   1560, 10 L.Ed.2d 844 (1963), the court found unconstitutional Pennsylvania's practice
13   of permitting public schools to read Bible verses at the opening of each school day.
14   (See also, Wallace v. Jaffree, 472 U.S. 38, 70, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985)
15   [Alabama statute authorizing moment of silence for school prayer]; Stone v. Graham,
16   449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980) [posting copy of Ten
17   Commandments on public classroom wall]; Engel v. Vitale, 370 U.S. 421, 430, 82
18   S.Ct. 1261, 1266, 8 L.Ed.2d 601 (1962) [recitation of "denominationally neutral"
19   prayer])

20        Religious activities prohibited in public schools thus include daily readings
21   from the Bible (Abington School District, supra, 374 U.S. 203), recitation of the
22   Lord's Prayer, (Ibid.), posting the Ten Commandments in every classroom (Stone v.
23   Graham, supra, 449 U.S. 39, beginning school assemblies with prayer (Collins v.
24   Chandler Unified School Dist., 644 F.2d 759 (9th Cir. 1981)), and teaching a
25   Transcendental Meditation course that includes a ceremony involving offerings to a
26   deity. (Malnak v. Yogi, 592 F.2d 197 (3d Cir. 1979))

27        In Altman v. Bedford Cent. School Dist., 245 F.3d 49, 78 (2nd Cir. 2001), the
28   court looked at whether a school's Earth Day celebration endorsed the religion of

Gaia. In finding that it did not, the court stated:

> "The district court made no finding that anyone attending the ceremonies suggested that the Earth possessed supernatural powers or that it should be worshiped; nor have plaintiffs called to our attention any evidence of such a suggestion. The court pointed to two remarks of the faculty advisor, one that was consistent with the teachings of Genesis, and one that was contrary to those teachings. But we cannot conclude that a reasonable observer would view either of those statements as having a Gaia-endorsing effect; *Supreme Court precedent makes clear that the Establishment Clause is not transgressed merely because a statement either is in agreement with, or is in disagreement with, a given religious tenet.*" (Emphasis added)

In <u>Doe v. Duncanville Ind. School District</u>, 70 F.3d 402, 406 (5th Cir.1995), the court held that a school choir singing the song "The Lord Bless You and Keep You," and even adopting it as a theme song, did not violate the Establishment Clause.

Justices of the Supreme Court themselves have remarked on the confusion surrounding the proper interpretation of the Establishment Clause. (See for example, <u>Rosenberger v. Rector</u>, 515 U.S. 819, 861, 115 S.Ct. 2510, 2532, 132 L.Ed.2d 700 (1995) [Thomas, J., concurring: "[O]ur Establishment Clause jurisprudence is in hopeless disarray . . ."]; <u>Lynch v. Donnelly</u>, 465 U.S. 668, 688-689, 104 S.Ct. 1355, 1367, 79 L.Ed.2d 604 (1984) [O'Connor, J., concurring: "It has never been entirely clear . . . how the three parts of the [*Lemon*] test relate to the principles enshrined in the Establishment Clause"]; <u>Van Orden v. Perry</u>, 545 U.S. 677, 125 S.Ct. 2854, 162 L.Ed.2d 607 (2005) [Thomas, J., concurring: "The unintelligibility of this Court's precedent raises the further concern that, either in appearance or in fact, adjudication of Establishment Clause challenges turns on judicial predilections"])

Recently, the Ninth Circuit in <u>Krestan v. Deer Valley Unified School District No. 97, of Maricopa County</u>, 561 F.Supp.2d 1078, 1086 (D. Ariz., 2008), commented

640660.2

WOODRUFF, SPRADLIN & SMART ATTORNEYS AT LAW COSTA MESA

on this confusion, stating:

> "The analytical test to be applied in determining whether the video violates the Establishment Clause is not easily identified. See *Card v. City of Everett*, 520 F.3d 1009, 1013-16 (9th Cir.2008) (discussing the somewhat confused state of Establishment Clause jurisprudence). The Supreme Court has used a number of different tests. In the plurality portion of her opinion for the Supreme Court in *Mergens*, Justice O'Connor applied the traditional three-part test found in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). See *Mergens*, 496 U.S. at 247-53, 110 S.Ct. 2356. That test asks (1) whether the government action in question has a secular purpose, (2) whether its principal or primary effect is one that neither advances nor inhibits religion, and (3) whether the action would foster an excessive government entanglement with religion. *Lemon*, 403 U.S. at 612-13, 91 S.Ct. 2105. [¶] Justice Kennedy concurred with the *Mergens* plurality, but applied a different test. *Mergens*, 496 U.S. at 260-62, 110 S.Ct. 2356. He asked whether the government action gives direct benefits to a religion in such a degree that it in fact establishes a state religion, or whether the government action coerces any student to participate in a religious activity. Id. at 260, 110 S.Ct. 2356. [¶] The Supreme Court's decision in *Good News Club v. Milford Central School*, 533 U.S. 98, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001), which was handed down after *Mergens*, applied neither *Lemon* nor Justice Kennedy's test. The case instead considered the school's neutrality toward religion, any coercive pressure students might feel to engage in the club's activity, and whether the school's action would be perceived as an endorsement of particular religious views. Id. at 114-18, 121 S.Ct. 2093."

///

WOODRUFF, SPRADLIN & SMART
ATTORNEYS AT LAW
COSTA MESA

640660.2

Given the confusion expressed both by the Ninth Circuit and the United States Supreme Court over how to determine whether an activity violates the Establishment Clause, it is not surprising that the law is not clear to a teacher that a single comment made in a lecture in a year-long course might constitute a violation of the Establishment Clause. This Court, apparently for the first time, made such a determination when it ruled that Dr. Corbett violated the Establishment Clause when he made the single statement during one lecture that the teaching of creationism in a high school biology class was "religious, superstitious nonsense."

By its ruling this Court determined that the first prong of the qualified immunity inquiry. Now, Dr. Corbett is entitled to a determination of the second prong of the inquiry, i.e., was the right deemed to have been violated clearly established in 2007. A review of the applicable law, as discussed above, and applying the required objective standard, mandates that this prong be decided in the negative – the right was *not* clearly established. Although the parties have had ample opportunity to brief this particular issue, to date no case has been presented where a school teacher was held to have violated the Establishment Clause by making a single statement during a year-long course. Accordingly, the right cannot be said to be clearly established and Dr. Corbett is entitled to a determination of qualified immunity in his favor.

**B.** **Dr. Corbett has raised the Issue of Qualified Immunity at the First Practicable Opportunity**

In Guzman-Rivera v. Rivera-Cruz, 98 F.3d 664, 667 (1st Cir. 1996), the Court discussed the question of when, during the course of the litigation, the qualified immunity defense may be raised. The court noted that the doctrine of qualified immunity may be raised in a motion to dismiss, on a motion for summary judgment or at trial. (See also, Skrtich v. Thornton, 280 F.3d 1295, 1306 (11th Cir. 2002) [qualified immunity may be raised on a pretrial motion to dismiss under Rule 12(b)(6), as an affirmative defense in a request for judgment on the pleadings pursuant to Rule 12(c), on a summary judgment motion pursuant to Rule 56(e), or at trial])

14

WOODRUFF, SPRADLIN & SMART
ATTORNEYS AT LAW
COSTA MESA

Courts also may raise the issue of qualified immunity *sua sponte* and even, for the first time, on appeal. (See, <u>Graves v. City of Coeur D'Alene</u>, 339 F.3d 828, 845 fn. 23 (9th Cir. 2003); see also, <u>Sonoda v. Cabrera</u>, 255 F.3d 1035 (9th Cir.2001))

In <u>Shepard v. Wapello County</u>, 303 F. Supp.2d 1004, 1012 (S.D. Iowa 2003), the court noted that generally qualified immunity should be decided long before trial; however, in that case, as the court noted, the issue could not be decided before trial because the defendants did not present it until their Rule 50(a) motions made during trial. The defendants in <u>Shepard</u> did not present the qualified immunity defense in their motion for summary judgment.

In <u>Kwai Fun Wong v. United States</u>, 373 F.3d 952, 956, 957 (9th Cir. 2004), the court recognized that the qualified immunity issue cannot be resolved without first deciding the scope of the constitutional rights at stake. Thus, the court recognized that while a defendant has the right to raise the qualified immunity on a motion to dismiss, often the exercise of that right is not a wise choice. (<u>Ibid.</u>)

In the recent case of <u>Pearson v. Callahan</u> the Court stated:

> "[T]here are cases in which there would be little if any conservation of judicial resources to be had by beginning and ending with a discussion of the 'clearly established' prong. '[I]t often may be difficult to decide whether a right is clearly established without deciding precisely what the constitutional right happens to be.' [Citation]" (<u>Pearson v. Callahan</u>, <u>supra</u>, 129 S.Ct. at 818)

Here, the Court has determined the first prong of the inquiry, i.e., Dr. Corbett violated the Establishment Clause when he made the single statement during one lecture that the teaching of creationism in a high school biology class was "religious, superstitious nonsense." This determination triggered, for the first time, the possibility of a qualified immunity defense. Up until this Court rendered its decision, Farnan contended that Dr. Corbett made anti-Christian or anti-religious comments on a daily basis throughout the 2007 semester; that anti-Christian comments essentially were the

15

theme of Dr. Corbett's lectures. Farnan clearly stated that the gist of his action was the "barrage of religious hostility" expressed throughout the Fall 2007 semester and that his action did not concern "a few incidental statements" of Dr. Corbett.

As noted above, case law did exist in 2007 that would seem to support Farnan's claim that a curriculum or class theme based on anti-Christian or anti-religious teachings could be a violation of the Establishment Clause. Thus, if Farnan's contentions were accepted as true, it did not appear that a viable qualified immunity defense existed.

This Court's ruling, however, is not based on Dr. Corbett making anti-Christian or anti-religious comments on a daily basis such that it was a theme of Dr. Corbett's AP European History course. Instead, this Court has held that a single comment made during a single lecture is sufficient to trigger an Establishment Clause violation.

This Court's May 1st decision here was the first time that a court has held that a single comment made by a teacher during the course of a single lecture in a year-long class could constitute an Establishment Clause violation. The parties have submitted numerous briefs in this case and, to date, no one has produced a case that has held that a teacher can violate the Establishment Clause by making a single statement during the course of one lecture.

There is no prejudice to Farnan by allowing Dr. Corbett to raise the qualified immunity defense at this time. Farnan has argued that he would be prejudiced by allowing the amendment because he already has undertaken extensive discovery and the parties already filed dispositive motions. This argument is not well taken because this discovery and these motions would have been filed anyway. First, Dr. Corbett is not the only defendant in this matter – the District also was a named Defendant in Farnan's complaint. As such, even if Dr. Corbett had raised the defense in his answer, all of the discovery and dispositive motions would have been necessary due to the District also being a party to the action. Further, in light of this Court's ruling on Defendants' motion to dismiss (finding that sufficient facts had been alleged to show a

16

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

potential violation of the Establishment Clause), as well as the Court's ruling on Farnan's motion for summary judgment (finding that a single, incidental statement constituted a violation of the Establishment Clause) it is likely that a qualified immunity defense would not have been sustained at the preliminary stages; thus necessitating the conducting of discovery and the filing of the dispositive motions.

Thus, Defendants, by seeking a determination of the qualified immunity defense as soon as possible after this Court's determination, have not unreasonably delayed in raising this defense but have asserted it at the first practicable moment. The qualified immunity defense is now ripe for this Court's determination and that determination should be in Dr. Corbett's favor.

## 3.    CONCLUSION

In light of the above, this Court should determine the qualify immunity defense in Dr. Corbett's favor and rule that he is immune from liability in this matter.

DATED: July 24, 2009                    WOODRUFF, SPRADLIN & SMART, APC


By: _____
    DANIEL K. SPRADLIN
    ROBERTA A. KRAUS
    Attorneys for Defendants CAPISTRANO
    UNIFIED SCHOOL DISTRICT and DR.
    JAMES CORBETT

WOODRUFF, SPRADLIN & SMART
ATTORNEYS AT LAW
COSTA MESA

640660.2

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1

## PROOF OF SERVICE

2

## STATE OF CALIFORNIA, COUNTY OF ORANGE

3

I am over the age of 18 and not a party to the within action; I am employed by WOODRUFF, SPRADLIN & SMART in the County of Orange at 555 Anton Boulevard, Suite 1200, Costa Mesa, CA 92626-7670.

4

5

On July 24, 2009, I served the foregoing document(s) described as **DEFENDANTS' MOTION FOR A DETERMINATION THAT DR. CORBETT IS ENTITLED TO QUALIFIED IMMUNITY; MEMORANDUM OF POINTS AND AUTHORITIES**

6

7

☐   by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list;

8

☒   by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list:

9

10

☐   **(BY MAIL)** I placed said envelope(s) for collection and mailing, following ordinary business practices, at the business offices of WOODRUFF, SPRADLIN & SMART, and addressed as shown on the attached service list, for deposit in the United States Postal Service. I am readily familiar with the practice of WOODRUFF, SPRADLIN & SMART for collection and processing correspondence for mailing with the United States Postal Service, and said envelope(s) will be deposited with the United States Postal Service on said date in the ordinary course of business.

11

12

13

14

☐   **(BY OVERNIGHT DELIVERY)** I placed said documents in envelope(s) for collection following ordinary business practices, at the business offices of WOODRUFF, SPRADLIN & SMART, and addressed as shown on the attached service list, for collection and delivery to a courier authorized by _____ to receive said documents, with delivery fees provided for. I am readily familiar with the practices of WOODRUFF, SPRADLIN & SMART for collection and processing of documents for overnight delivery, and said envelope(s) will be deposited for receipt by _____ on said date in the ordinary course of business.

15

16

17

18

19

☐   **(BY FACSIMILE)** I caused the above-referenced document to be transmitted to the interested parties via facsimile transmission to the fax number(s) as stated on the attached service list.

20

21

☐   **(BY PERSONAL SERVICE)** I delivered such envelope(s) by hand to the offices of the addressee(s).

22

☐   (State)   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

23

24

☒   (Federal)   I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct.

25

Executed on July 24, 2009 at Costa Mesa, California.

26

27

Laura F. Perez

28

566895.1

ADVOCATES FOR FAITH AND FREEDOM
Jennifer L. Monk, Esq.
24910 Las Brisas Road, Suite 110
Murrieta, CA 92562
Telephone: (951) 304-7583
Facsimile: (951) 600-4996

Attorneys for Plaintiff
**CHAD FARNAN, a minor, by and
through his parents BILL FARNAN and
TERESA FARNAN**

Michael D. Hersh, Esq.
CALIFORNIA TEACHERS ASSOCIATION –
LEGAL DEPARTMENT
11745 East Telegraph Rd.
Santa Fe Springs, CA 90670
Telephone: (562) 478-1410
Facsimile: (562) 478-1434

Attorneys for Intervenors
**CALIFORNIA TEACHERS
ASSOCIATION and CAPISTRANO
UNIFIED EDUCATION
ASSOCIATION**

1/6/09

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA