UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| C. F.,<br><br>                              Plaintiff(s),<br><br>                    v.<br><br>CAPISTRANO UNIFIED SCHOOL<br>DISTRICT, *et al.*,<br>                         Defendant(s). | CASE NO: SACV 07-1434 JVS (ANx)<br><br>ORDER RE MOTION FOR LEAVE<br>TO FILE AN AMENDED ANSWER,<br>MOTION FOR A DETERMINATION<br>RE QUALIFIED IMMUNITY, AND<br>SUPPLEMENTAL BRIEFING |

I.    BACKGROUND

Plaintiff C.F., by and through his parents Bill Farnan and Teresa Farnan, (collectively, "Farnan"), asserted a claim for relief for violation of C.F.'s First Amendment rights by the Capistrano Unified School District ("District") and Dr. James C. Corbett ("Corbett"), (collectively, "School Defendants").  On April 28, 2008, this Court granted a motion allowing the California Teachers Association

1

("CTA") and Capistrano Unified Education Association ("CUEA"),

(collectively, "Unions"), to intervene for defendants in the action.  (Docket No.

29.)  Farnan asserted that his rights under the Establishment Clause were violated

by a practice and policy hostile toward religion and favoring irreligion over

religion.  (First Amended Complaint ("FAC") ¶¶ 22, 25.)  At the focus of the

dispute are remarks made by Corbett in his Advanced Placement European History

class.  (Id. at ¶¶ 14-15.)

On May 1, 2009, this Court ruled on the parties' cross-motions for summary

judgment.  (Docket No. 87.)  The Court granted Farnan's motion for summary

judgment against Corbett with respect to the "Peloza statement."  (Id.)  The Court

granted the School Defendant and the Unions' motions with respect to all other

statements and with respect to the District's liability.  (Id.)

II.    DISCUSSION

    A.    Leave to File an Amended Answer

    The School Defendants now move for leave to file an amended answer

pursuant to Federal Rule of Civil Procedure 15(a) in order to plead qualified

immunity.  In the Ninth Circuit, a request for leave to amend made after the entry

of a Rule 16 Scheduling Order is governed primarily by Rule 16(b).  Johnson v.

Mammoth Recreations, Inc., 975 F.2d 604, 608-09 (9th Cir. 1992).  Pursuant to

Rule 16(b), a scheduling order "shall not be modified except upon a showing of

good cause and by leave of the district judge . . ."  Fed. R. Civ. P. 16(b).  The good

cause standard "primarily considers the diligence of the party seeking the

amendment."  Johnson, 975 F.2d at 609.  If good cause is shown, the party must

then demonstrate that amendment was proper under Rule 15.  Id.; Fed. R. Civ. P.

15, 16(b).

The deadline for filing amended pleadings in this action was August 17, 2008. (Docket No. 31, p. 1.) An amended order in this case set a later date as the last day to file and serve motions. This order, however, does not supersede the date set in the initial order stating that amended pleadings must be filed by August 17, 2008. Therefore, the time set by the Scheduling Order for filing amended pleadings has past.

Although it may appear to be a strict requirement, the Ninth Circuit has found that a party wishing to file an amended pleading after the time set by the scheduling order must specifically request that the court modify the scheduling order. Johnson, 975 F.2d at 608-09. In Johnson, the court found that merely moving to amend the complaint is not sufficient. Id. Some courts have considered a motion to amend the complaint as a motion to amend the scheduling order and the court's denial of that motion a denial of a motion to amend the scheduling order. Id. (citing Spiller v. Ella Smithers Geriatric Ctr., 919 F.2d 339, 343 (5th Cir.1990); R.L. Clark Drilling Contractors, Inc. v. Schramm, Inc., 835 F.2d 1306, 1308 (10th Cir.1987)). The Ninth Circuit, however, has found to the contrary. Id. (citing Jauregui v. City of Glendale, 852 F.2d 1128, 1133-34 (9th Cir. 1988); Dedge v. Kendrick, 849 F.2d 1398 (11th Cir.1988)).

Although a request to modify the Scheduling Order need not appear in a separate motion, the School Defendants do not specifically make such a request in the motion for leave to amend. Nor do the School Defendants address Federal Rule of Civil Procedure 16(b).

Accordingly, the Court denies the School Defendants' motion for leave to

file an amended answer, without prejudice.  Given that the Court has denied leave to amend, the Court cannot consider the motion for a determination that Corbett is entitled to qualified immunity at this time.  Therefore, the Court denies that motion as moot.  The Court also defers consideration of Farnan's request for attorneys' fees.  However, as the parties both agree, the question of qualified immunity does not affect Farnan's request for injunctive and declaratory relief.  The Ninth Circuit has held that "a defense of qualified immunity is not available for prospective injunctive relief."  <u>Vance v. Barrett</u>, 345 F.3d 1083, 1091 n.10 (9th Cir. 2003) (citing <u>Presbyterian Church (U.S.A.) v. United States,</u> 870 F.2d 518, 527 (9th Cir.1989) ("Qualified immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or injunctive relief.")).  Therefore, the Court will now address Farnan's request for injunctive relief and a declaratory judgment.

B.    <u>Equitable Relief</u>

1.    <u>Injunctive Relief</u>

Farnan requests "a permanent injunction ordering Corbett to refrain from expressing any disapproval of religion while acting in his official capacity as a public school employee."[1]  (Suppl. Br. p. 1.)  The request for injunctive relief is denied.

---

[1] As a preliminary matter, the Court notes that Farnan's FAC specifies that this action was brought pursuant to Section 1983 of the United States Code, which allows for suits in equity.  42 U.S.C. § 1983.  Farnan requested permanent injunctive relief in his FAC.  (FAC, Prayer for Relief.)

To obtain a permanent injunction, a plaintiff must demonstrate:

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). The Court's "decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." Id. "Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." Swann v. Charlotte-Mecklenburg Bd. of Ed., 402 U.S. 1, 15 (1971). "As with any equity case, the nature of the violation determines the scope of the remedy." Id. at 16.

"[I]njunctive relief is not automatic, and there is no rule requiring automatic issuance of a blanket injunction when a violation is found. . . . The grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law." N. Cheyenne Tribe v. Norton, 503 F.3d 836, 843 (9th Cir. 2007) (internal quotation marks omitted).

When injunctive relief is appropriate, the court must balance the equities between the parties and give due regard to the public interest. Sometimes a full injunction is appropriate. But at other times, the

5

equities demand a partial injunction.  A district court has broad
latitude in fashioning equitable relief when necessary to remedy an
established wrong.

Id. (internal quotation marks omitted).  "[I]n constitutional adjudication as
elsewhere, equitable remedies are a special blend of what is necessary, what is fair,
and what is workable."  Lemon v. Kurtzman, 411 U.S. 192, 200 (1973).

a.     The Proposed Injunction

First and foremost, the Court finds that the proposed injunction is overbroad.
Farnan requests a permanent injunction ordering Corbett to refrain from expressing
any disapproval of religion while acting in his official capacity as a public school
employee.  (Suppl. Br. p. 1.)  As discussed in the Court's May 1, 2009 Order, the
Establishment Clause is not a blanket prohibition on making any disapproving or
hostile statements.

The recent Ninth Circuit case of Catholic League for Religious and Civil
Rights v. City and County of San Francisco, 567 F.3d 595 (9th Cir. 2009)
("Catholic League"), leaves no doubt as to this point.  In Catholic League, the
Ninth Circuit found there were statements in a City and County resolution that,
"taken in isolation, may be said to convey disparagement towards the Catholic
Church.  But to be violative of the Establishment Clause, those statements must
overwhelm the Resolution's secular dimensions."  Id. at 605.  In addition, the
plaintiffs in that case argued, with respect to the primary effect prong of the Lemon
test, that if the Resolution conveyed any message of hostility towards the Catholic
religion, the Resolution failed the Lemon test.  Id. n.11; Lemon v. Kurtzman, 403
U.S. 602 (1971).  The court rejected this argument, explaining that "the focus of

6

this prong is on the <u>primary</u> effect of the government's conduct." <u>Catholic League</u>, 567 F.3d at 605 n.11 (internal quotation marks omitted). The court also found that, even though certain statements may be viewed as disparaging, that the Resolution satisfied the first and second prongs of the <u>Lemon</u> test. <u>Id.</u> at 608.

In addition, reference to the language of the <u>Lemon</u> test as well as case law interpreting <u>Lemon</u> demonstrates that Farnan's proposed injunction would prohibit speech beyond that which is prohibited by the Establishment Clause. The <u>Lemon</u> test provides that "[f]irst, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive government entanglement with religion." <u>Lemon</u>, 403 U.S. at 612-13. Permissible conduct must satisfy all three requirements. <u>Edwards v. Aguillard</u>, 482 U.S. 578, 583 (1987).

With respect to the first prong, the Ninth Circuit has explained that "[g]overnment action satisfies the purpose prong if it is grounded in a secular purpose." <u>Catholic League</u>, 567 F.3d at 600 (internal quotation marks omitted). Thus, courts must look to the purpose of the statement at issue, not merely to whether the statement expressed any disapproval of religion. The fact that the statement must be grounded in a secular purpose indicates that an official may have an ancillary non-secular purpose without violating the Establishment Clause. Therefore, even if an official made a statement that could be viewed as hostile to religion, it would only violate the Establishment Clause if it was not grounded in a secular purpose.

Likewise, the language of the second prong of the <u>Lemon</u> test makes clear that courts must look to the <u>primary</u> effect of the statement. Thus, even if a

7

statement were somewhat disapproving of religion, its primary effect may not be. The third prong, excessive entanglement generally requires some degree of ongoing entanglement. In <u>Vernon</u>, for example, the Ninth Circuit found no excessive entanglement, explaining that the "plaintiff has presented no evidence at all to suggest that the challenged government action will be ongoing and continuous." <u>Vernon</u>, 27 F.3d 1385, 1401 (9th Cir. 1994). Thus, a public official could potentially make a limited number of statements which were disapproving of religion and still satisfy this third prong.

Accordingly, to prohibit Corbett from making any statements disapproving of religion would exceed the bounds of the Establishment Clause. "As with any equity case, the nature of the violation determines the scope of the remedy." <u>Swann</u>, 402 U.S. at 15. Here, the proposed injunction greatly exceeds the nature of the violation found.

Second, the Court finds the proposed permanent injunction is vague and unworkable. As discussed above, Farnan requests a permanent injunction ordering Corbett to refrain from <u>expressing any disapproval of religion</u> while acting in his official capacity as a public school employee. Farnan has not attempted to provide a specific explanation of what speech would express disapproval of religion or who would make such a determination. For the Court to monitor or examine every such possible violation would be unworkable. Moreover, such an injunction would be highly likely to chill constitutional and necessary speech. Teachers would likely find it difficult to know exactly where to draw the line, particularly in a course such as A.P. European History, in which religion must be thoroughly and frequently discussed. The fear of being held in contempt of court might lead teachers to exercise excessive caution and to steer well clear of the prohibited subject matter. See <u>Van Dyke v. Regents of University of California</u>, 815 F.Supp.

1341, 1346 (C.D.Cal. 1993). Farnan contends that "protecting public school children should be the benchmark in this case." (Reply to Unions' Opp., pp. 4-5.) A vague, blanket prohibition on speech in this case, however, would do a disservice to public school children, given the likely chilling effect such a prohibition would have on teachers. Thus, the Court finds that the public interest would be disserved by the proposed permanent injunction.

The case of <u>Van Dyke</u>, 815 F.Supp. at 1341, is instructive with respect to the issues of overbreadth, vagueness, and unenforceability discussed above. In that case, the plaintiffs requested

a preliminary and permanent injunction enjoining [a professor] and his associates from using state funds administered by defendants [ ] to fund anti-religious activities . . . which [would] have the purpose <u>or effect</u> of disrupting, destroying, impeding and interfering with the free exercise by plaintiffs of their religion . . . [and] from using state funds to finance his anti-religious . . . activities.

<u>Id.</u> at 1346 (internal quotation marks omitted). The court found that it had "neither the power to grant such relief nor to enforce it if granted. It is both vague, since defendants would have no idea of what activity was proscribed by the ban on 'anti-religious' activity, and overbroad, because a blanket ban on 'anti-religious' activity would encompass a great deal of academic speech and scholarly inquiry clearly protected by the First Amendment." <u>Id.</u> This Court agrees and finds that the same problems exist with Farnan's proposed injunction in this case.

Furthermore, the Court finds the words of the Supreme Court in <u>Lynch v. Donnelly</u>, 465 U.S. 668, 678-79 (1984), particularly instructive in this case. In

9

Lynch, the Supreme Court explained that:

> In each [Establishment Clause] case, the inquiry calls for line
> drawing; no fixed, per se rule can be framed. The Establishment
> Clause like the Due Process Clauses is not a precise, detailed
> provision in a legal code capable of ready application. The purpose of
> the Establishment Clause "was to state an objective, not to write a
> statute." The line between permissible relationships and those barred
> by the Clause can no more be straight and unwavering than due
> process can be defined in a single stroke or phrase or test. The Clause
> erects a "blurred, indistinct, and variable barrier depending on all the
> circumstances of a particular relationship."

Id. (citations omitted). Farnan's proposed injunction seeks to prohibit Corbett
from making any statements disapproving of religion. The language from Lynch
explaining that the particular circumstances in each case must be carefully
examined demonstrates that the proposed injunction is too vague and too broad to
be enforceable. This Court does not find that an injunction prohibiting a violation
of the Establishment Clause is never appropriate, but rather that the proposed
blanket injunction is improper.

The problems of overbreadth and vagueness go to both the third and fourth
prongs of the eBay test. eBay Inc., 547 U.S. at 391. For the reasons discussed
above, the proposed injunction would pose an unnecessary and extreme hardship
on Corbett and would do a disservice to the public. For these reasons alone, the
Court declines to grant the requested permanent injunctive relief.[2] The Court need

---

[2] The Court also notes that Farnan has failed to present the Court with a

not consider the first two prongs of the <u>eBay</u> test with respect to the proposed injunction.

### b. <u>Mootness</u>

Although the Court has declined to grant the requested injunction, the Court recognizes that a more narrowly-tailored and definite injunction might be appropriate in this case. For example, an injunction prohibiting Corbett from using the phrase "superstitious nonsense" to describe Peloza's teachings or creationism might survive an overbreadth and vagueness challenge and fit within the scope of the violation found. As set forth above, the equities sometimes demand a partial injunction. <u>N. Cheyenne Tribe</u>, 503 F.3d at 843.

However, regardless of the scope of the injunction, no injunction may issue in this case if such relief is moot. The School Defendants and the Unions argue that the need for an injunction is moot because there is no danger that Corbett will violate C.F.'s First Amendment rights in the future. They point out that C.F. has completed Corbett's A.P. European History Course and received a grade.

"A federal court's Article III power to hear disputes extends only to live cases or controversies. A request for injunctive relief remains live only so long as there is some present harm left to enjoin." <u>Taylor v. Resolution Trust Corp.</u>, 56 F.3d 1497, 1502 (D.C. Cir. 1995) (citing <u>Renne v. Geary</u>, 501 U.S. 312, 320-21 (1991) ( "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing,

single authority in which a court ordered such a broad injunction in an Establishment Clause case.

present adverse effects.")).  "Once the movant is no longer in harm's way, a motion for an injunction becomes moot."  Id.

In Craig v. Boren, 429 U.S. 190, 192 (1976), for example, the plaintiff's request for an injunction against enforcement of an alcohol consumption restriction applicable only to males aged 18 to 20 became moot once the plaintiff turned 21. Similarly, in Ringgold v. United States, 553 F.2d 309, 310 (2d Cir.1977), a cadet's suit to enjoin a military academy's application of the honor code against him became moot when he resigned from the academy.  In Taylor, 56 F.3d at 1502 (citation omitted), the court found that:

> while a court may enjoin an employer from retaliating against its
> current employees who are challenging the employer's wrongdoing,
> and former employees can recover damages for past retaliation
> suffered while employed, a request for an injunction against future
> retaliation in the workplace normally becomes moot once the
> employees no longer work for that employer.

Likewise, the case of DeFunis v. Odegaard, 416 U.S. 312, 314-15 (1974), is instructive.  In that case, DeFunis brought suit, on behalf of himself alone, asking the trial court to issue a mandatory injunction commanding the respondents to admit him as a member of the law school class.  Id.  The trial court agreed and DeFunis was admitted to the law school.  When the Supreme Court ruled on the case, DeFunis had registered for his final quarter in law school.  Id. at 316.  The Court found that the request for injunctive relief was moot because the "controversy between the parties ha[d] clearly ceased to be definite and concrete and no longer touch[ed] the legal relations of parties having adverse legal interests."  Id. at 317 (internal quotation marks omitted).  This was because

DeFunis had already been admitted to the law school and was about to graduate. The Court made special note that "DeFunis did not cast his suit as a class action." <u>Id.</u>

Similar to the facts in <u>DeFunis</u>, C.F. is no longer in Corbett's class. Thus, he no longer has a personal stake in an injunction to prevent Corbett from making certain statements in his classroom. Any such statements would have no direct effect on C.F. In his briefs, Farnan points out that voluntary cessation of illegal conduct by the defendant does not make the case moot. Indeed, the Supreme Court has explained that "[t]here is a line of decisions in this Court standing for the proposition that the voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, <u>i.e.</u>, does not make the case moot." <u>Id.</u> at 318 (internal quotation marks omitted).

In <u>DeFunis</u>, the Supreme Court found that the doctrine of voluntary cessation:

> would be quite relevant if the question of mootness here had arisen by reason of a unilateral change in the admissions procedures of the Law School. For it was the admissions procedures that were the target of this litigation, and a voluntary cessation of the admissions practices complained of could make this case moot only if it could be said with assurance that there is no reasonable expectation that the wrong will be repeated. Otherwise, (t)he defendant is free to return to his old ways, and this fact would be enough to prevent mootness because of the public interest in having the legality of the practices settled. But mootness in the present case depends not at all upon a voluntary cessation of the admissions practices that were the subject of this

13

litigation.  It depends, instead, upon the simple fact that DeFunis is now in the final quarter of the final year of his course of study, and the settled and unchallenged policy of the Law School to permit him to complete the term for which he is now enrolled.

Id. (internal quotation marks and citations omitted).  The same is true in the present case.  The Court agrees that Corbett's voluntary cessation would not suffice to moot this case, given the possibility of recurrence.[3]  However, Corbett's voluntary cessation is not the issue here.  The issue is that C.F. is no longer in the class.[4]  Thus, an injunction in this action would not have an impact on C.F., within the meaning of the "live case or controversy" jurisprudence.

The next issue is whether this case falls within the exception to the mootness doctrine for disputes that are "capable of repetition, yet evading review."  Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515 (1911).  In Weinstein v. Bradford, 423 U.S. 147, 149 (1975), the Supreme Court set forth a two-part test to determine whether a dispute is "capable of repetition, yet evading review."  The Court

---

[3]  "[I]t is actually well-settled that an action for an injunction does not become moot merely because the conduct complained of was terminated, if there is a possibility of recurrence, since otherwise the defendants would be free to return to [their] old ways."  F.T.C. v. Affordable Media, 179 F.3d 1228, 1237 (9th Cir. 1999) (internal quotation marks omitted).

[4]  F.T.C., 179 F.3d at 1237, further explains the difference between the effect of the perpetrator's conduct and the victim's conduct on a request for injunctive relief.

explained that the doctrine is limited to the situation where two elements combine: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, <u>and</u> (2) there was a reasonable expectation that <u>the same complaining party</u> would be subjected to the same action again." <u>Id.</u> (emphases supplied).

Here, even if the Court assumes that the first prong is met, the Court finds that the second prong is not satisfied.[5] The two-pronged test clearly states that there must be a reasonable expectation that <u>the same complaining party</u> would be subjected to the <u>same action</u> again. Moreover, the case law clearly supports the plain language of the test. In <u>Weinstein</u>, a North Carolina prisoner brought an action against the North Carolina Board of Parole asserting that the Board was required to afford him certain procedural rights in considering his eligibility for parole. <u>Id.</u> at 147. The Supreme Court held that because the prisoner had obtained a full release from supervision he had no interest in procedures followed by the Parole Board. <u>Id.</u> at 148.

The Court found that the second prong of the test set forth above was not met because while other prisoners would likely petition the Board, there was "no

---

[5] Although the Court need not reach a decision on this point, the Court finds that it is likely that the first prong is met. It is somewhat unclear whether the A.P. European History course is normally a semester-long or a year-long course, given that the FAC alleges that C.F. attended the course during the Fall of 2007. (FAC ¶ 14.) Whether the course is a semester long or a year long, the Court finds it likely that a suit such as the present action would likely always exceed the duration of the course.

demonstrated probability that the respondent w[ould] again be among that number." <u>Id.</u> at 149.  The Court did not consider the first prong of the two-part test.  The Court found, therefore, that the case was moot.  <u>Id.</u>

The <u>Weinstein</u> Court relied upon its previous ruling in <u>Sosna v. Iowa</u>, 419 U.S. 393 (1975).  In <u>Sosna</u>, a woman brought a class action seeking to have a one-year residency requirement for bringing a divorce petition declared unconstitutional.  <u>Id.</u> at 395.  By the time her case reached the Supreme Court, she had satisfied the durational residency requirement.  <u>Id.</u> at 398.  The Court found that if she had sued only on her own behalf as opposed to as a class representative, the fact that she had satisfied the one-year residency requirement and the fact that she had obtained a divorce elsewhere would make the case moot.  <u>Id.</u> at 399.  The Court explained that "[u]nless we were to speculate that she m[ight] move from Iowa, only to return and later seek a divorce within one year from her return," the "capable of repetition, yet evading review" exception would not be applicable.  <u>Id.</u> at 400.  The Court then drew a distinction between actions brought on behalf of individuals and class actions.  The Court explained that "[a]lthough the controversy is no longer alive as to appellant Sosna, it remains very much alive for the class of persons she has been certified to represent."  <u>Id.</u> at 401.

In this case, however, Farnan did not file a class action.  Thus, cases which do not find a class action moot, even though the class representative is no longer in harm's way, are not applicable.

Numerous other cases have also found that the exception for conduct "capable of repetition, yet evading review" requires a reasonable expectation that <u>the same complaining party</u> would be subjected to the same action again.  In <u>DeFunis</u>, 416 U.S. at 318-19, the Supreme Court found that the case did not fall

16

under the exception because the plaintiff himself would "never again be required to run the gantlet of the Law School's admission process, and so the question is certainly not capable of repetition so far as he is concerned." Id. at 319 (internal quotation marks omitted); see also Norman v. Reed, 502 U.S. 279, 287-88; (1992); Murphy v. Hunt, 455 U.S. 478, 482-83 (1982); Ringgold, 553 F.2d at 310; Taylor, 56 F.3d at 1502.

Moreover, the Ninth Circuit has emphasized that potential injury to the same plaintiff is required. Sample v. Johnson, 771 F.2d 1335, 1338 (9th Cir. 1985). In Sample, the court found that "[t]he questions presented by appellants' claims against the government evade review. They concern twenty-day and six-month time-limits." Id. at 1339. The court then explained that "[t]he question then is whether the practices to which appellants object are capable of repetition as to them." Id. "Where no class action has been instituted, the capable of repetition doctrine is applied only in exceptional situations where the plaintiff can reasonably show that he will again be subject to the same injury." Id. The court also found that certain cases have made it "clear that, no matter how important the issue or how likely that a similar action will be brought, a court is without jurisdiction if there is not a sufficient likelihood of recurrence with respect to the party now before it." Id. at 1342.

The Court now turns to the question of whether C.F. is likely to be injured by the same conduct in the future. The Ninth Circuit has explained that, generally, the burden for showing a likelihood of recurrence is firmly on the plaintiff. Id. The court has found that "[t]he likelihood of the injury recurring must be calculable and if there is no basis for predicting that any future repetition would affect the present plaintiffs, there is no case or controversy." Id. at 1340 (citing Preiser v. Newkirk, 422 U.S. 395, 402-03 ("prisoner's challenge to transfer from

medium to maximum security prison moot because of re-transfer to medium

security; any fear of returning to maximum security 'remote and speculative'"")).

The court has also explained that it prefers "to describe 'probability' qualitatively,

as <u>requiring a very significant possibility</u>, and not quantitatively, as mandating a

'greater than fifty percent' likelihood." <u>Id.</u> at 1343 (emphasis supplied).

     In <u>Sample</u>, the court pointed to <u>DeFunis</u> as an example of case where it was

"virtually certain that the plaintiff would never again be affected by the practice

that he challenged." <u>Id.</u> at 1340 (citing <u>DeFunis</u>, 416 U.S. at 318-19 (noting that it

was "certain that plaintiff, who challenged admission policies of law school to

which he was ordered admitted and from which he graduated, would never go

through law school again")). There is nothing in the record to suggest that C.F.

desires to take additional AP classes from Corbett or that he has taken any steps to

do so. The mere fact that C.F. will be a senior at the school is insufficient to justify

injunctive relief. The Court finds that this case is similar to <u>DeFunis</u> in that it

appears unlikely that C.F. would find himself in one of Corbett's classes again.

Farnan has not met his burden of showing a significant possibility.[6]

     Accordingly, the Court finds that Farnan does not have the requisite personal

_____

   [6] Moreover, "[t]he [Supreme] Court has never held that a mere physical or

theoretical possibility was sufficient to satisfy the test stated in <u>Weinstein</u>. If this

were true, virtually any matter of short duration would be reviewable. Rather, we

have said that there must be a reasonable expectation or a demonstrated probability

that the same controversy will recur involving the same complaining party."

<u>Murphy</u>, 455 U.S. at 482-83. Here, the suggestion that C.F. may take a course

from Corbett in the future is mere speculation with little to no basis for support.

stake in this action and the challenged conduct is not "capable of repetition, yet evading review." Therefore, Farnan's claim for injunctive relief is denied as moot.

### 2. Declaratory Judgment

Farnan also seeks declaratory relief pursuant to 28 U.S.C. § 2201.[7] (Mot. p. 1.) That section provides that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. In Sample, the Ninth Circuit found that since awards had been made to the plaintiffs, "their declaratory and injunctive claims subsist[ed] only if th[e] case involve[d] claims that [were] capable of repetition with respect to those individuals." Sample, 771 F.2d at 1338 (emphasis supplied). The Court analyzed the declaratory and injunctive claims together, using the same reasoning discussed above. In Craig, the Supreme Court found that "since only declaratory and

---

[7] Farnan requests that "this Court enter a Declaratory Judgment stating that Defendants' policy or practice of acting with hostility towards religion and favoring irreligion over religion violates the First Amendment to the United States Constitution." (FAC, Prayer for Relief.)

injunctive relief against enforcement of the gender-based differential is sought, the controversy has been rendered moot as to Craig." <u>Craig</u>, 429 U.S. at 192.

This Court recognizes that this case is slightly different from <u>Sample</u> and <u>Craig</u> in that here, Farnan has requested nominal damages as well as injunctive and declaratory relief.[8] Even assuming that this is a distinction with a difference and that the Court may enter a declaratory judgment in this action, this Court declines to do so.

"[T]he Declaratory Judgment Act is deliberately cast in terms of permissive, rather than mandatory, authority. The Act gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." <u>Government Employees Ins. Co.</u>, 133 F.3d at 1223 (internal quotation marks and citations omitted). In <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 289 (1995) (emphasis supplied), the Supreme Court explained:

> We believe it more consistent with the statute to vest district courts
> with discretion in the first instance, because facts bearing on the
> <u>usefulness of the declaratory judgment remedy</u>, and the fitness of the
> case for resolution, are peculiarly within their grasp.

Here, the Court sees no purpose or "usefulness" for a declaratory judgment at this time. C.F. is unlikely to take one of Corbett's classes in the future. In addition, this Court has already addressed the substantive issues in this case in its May 1, 2009 Order, now published, <u>C.F. v. Capistrano Unified School District</u>, 615

---

[8] Farnan's claim for nominal damages is not moot. <u>See</u> <u>Magee v. Waters</u>, 810 F.2d 451, 452 (4th Cir. 1987).

F.Supp. 2d. 1137 (C.D. Cal. 2009).  Thus, the Court declines to exercise its discretion to enter a declaratory judgment in this case.[9]

III.   CONCLUSION

For the foregoing reasons, the Court denies the School Defendants' motion for leave to file an amended answer, without prejudice.  The Court denies the motion for a determination that Corbett is entitled to qualified immunity as moot, without prejudice.  The Court defers consideration of Farnan's request for attorneys' fees raised in the Supplemental Briefing.  The Court denies Farnan's request for injunctive and declaratory relief.

DATED:  July 27, 2009

_____
JAMES V. SELNA
UNITED STATES DISTRICT JUDGE

---

[9]  Given that this Court has denied the request for declaratory relief, the Court finds that the Unions' argument that the May 1, 2009 ruling should not be the basis for a final judgment in this case is procedurally improper.  This request to revisit the substantive issues would be more properly addressed on a motion for reconsideration.  Farnan's request that the Court retain jurisdiction over this case in the event it becomes necessary for Farnan to request monitoring or other compliance measures is also denied as moot.

21