O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| C.F., ET AL.<br><br>                                   Plaintiffs,<br><br>                    v.<br><br>CAPISTRANO UNIFIED SCHOOL<br>DISTRICT, ET AL.,<br>                                   Defendants. | CASE NO: SACV 07-1434 JVS (ANx)<br><br>ORDER RE MOTION TO AMEND<br>SCHEDULING ORDER AND FOR<br>LEAVE TO FILE AN AMENDED<br>ANSWER AND MOTION FOR A<br>DETERMINATION RE QUALIFIED<br>IMMUNITY |

I.    <u>BACKGROUND</u>

Plaintiff C.F., by and through his parents Bill Farnan and Teresa Farnan (collectively, "Farnan") asserted a claim for relief for violation of C.F.'s First Amendment rights by the Capistrano Unified School District ("District") and Dr. James C. Corbett ("Corbett") (collectively, "School Defendants").  On April 28, 2008, this Court granted a motion allowing the California Teachers Association

1

("CTA") and Capistrano Unified Education Association ("CUEA") (collectively, "Unions") to intervene as defendants in the action. (Docket No. 29.) Farnan asserted that his rights under the Establishment Clause were violated by a practice and policy hostile toward religion and favoring irreligion over religion. (First Amended Complaint ("FAC") ¶¶ 22, 25.)  At the focus of the dispute are remarks made by Corbett in his Advanced Placement European History class.  (Id. at ¶¶ 14-15.)

On May 1, 2009, this Court ruled on the parties' cross-motions for summary judgment.  (Docket No. 87.)  The Court granted Farnan's motion for summary judgment against Corbett with respect to one statement (the "Peloza statement"). (Id.)  The Court granted the School Defendants and the Unions' motions with respect to all other statements and with respect to the District's liability.  (Id.)  On July 27, 2009, this Court denied Farnan's request for injunctive and declaratory relief.  (Docket No. 107.)

The School Defendants now move to amend the Scheduling Order and seek leave to amend their Answer to assert a qualified immunity defense.  The School Defendants also seek a ruling that Corbett is entitled to qualified immunity.  The Unions have joined in the motions.[1]  Farnan opposes the motions.

II.    LEGAL STANDARDS

    A.    Leave to Amend

---

[1]  Although the Unions have joined in the motions, the Court refers to the moving party as the "School Defendants" for simplicity.

2

In the Ninth Circuit, a request for leave to amend made after the entry of a Rule 16 Scheduling Order is governed primarily by Rule 16(b).  <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 608-09 (9th Cir. 1992).  Pursuant to Rule 16(b), a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge . . .."  Fed. R. Civ. P. 16(b).  If good cause is shown, the party must then demonstrate that amendment was proper under Rule 15.  <u>Johnson</u>, 975 F.2d at 608; Fed. R. Civ. P. 15, 16(b).

Rule 15(a) provides that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  In the absence of an "apparent reason," such as undue delay, bad faith, dilatory motive, prejudice to defendants, futility of the amendments, or repeated failure to cure deficiencies in the Complaint by prior amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint.  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Moore v. Kayport Package Express, Inc.</u>, 885 F.2d 531, 538 (9th Cir. 1989).  Consideration of prejudice to the opposing party "carries the greatest weight."  <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003).  Given the liberal standards mandated by Rule 15, "the nonmovant bears the burden of showing why amendment should not be granted."  <u>Senza-Gel Corp. v. Seiffhart</u>, 803 F.2d 661, 666 (Fed. Cir. 1986).

B.    <u>Qualified Immunity</u>

"Government officials who perform discretionary functions are entitled to qualified immunity only 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>DiRuzza v. County of Tehama</u>, 206 F.3d 1304, 1313 (9th Cir. 2000) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818

1  (1982)). "In Saucier v. Katz, 533 U.S. 194 [(2001)], the Supreme Court

2  announced a two-step approach to evaluating qualified immunity claims. In

3  the first step, we consider whether a constitutional right was violated by the

4  [official's] conduct." Graves v. City of Coeur D'Alene, 339 F.3d 828, 845-

5  46 (9th Cir. 2003) (citations omitted), abrogated in part by Hiibel v. Sixth

6  Judicial Dist. Court of Nevada, Humboldt County, 542 U.S. 177 (2004).

7  In the second step, we "ask whether the right was clearly established."[2] Id.

8  "To determine whether a right is clearly established, the reviewing court

9  must consider whether a reasonable officer would recognize that his or her

10  conduct violates that right under the circumstances faced, and in light of the

11  law that existed at that time." Kennedy v. City of Ridgefield, 439 F.3d

12  1055, 1065 (9th Cir. 2006); see also Saucier, 533 U.S. at 202.

13

14  The doctrine protects "all but the plainly incompetent or those who

15  knowingly violate the law. . . . [I]f officers of reasonable competence could

16  disagree on th[e] issue [of whether a chosen course of action is

17  lawful], immunity should be recognized." Malley v. Briggs, 475 U.S. 335,

18  341 (1986). The plaintiff has the burden of establishing that the

19  constitutional right at issue was "clearly established" at the time of the

20  alleged violation. Kennedy, 439 F.3d at 1065.

21  III.  DISCUSSION

22

23  A.  Leave to Amend Scheduling Order and File an Amended Answer

24

25  [2] In Pearson v. Callahan, 129 S.Ct. 808, 821 (2009), the Supreme Court found that

26  although the "two-step Saucier procedure is often, but not always, advantageous," district court

27  judges have discretion to "determine the order decisionmaking."

28  4

1

2

          1.     <u>Rule 16(b)</u>

      The School Defendants move to amend the Scheduling Order and seek leave to amend their Answer in order to assert the defense of qualified immunity.  The deadlines in the Scheduling Order for filing amended pleadings and for filing motions have passed.[3]  Pursuant to Rule 16(b), a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge . . ."  Fed. R. Civ. P. 16(b).

          a.     <u>The School Defendants' Reason for Modification</u>

      The School Defendants argue that they have good cause to request modification of the Scheduling Order because it only became apparent that Corbett was entitled to qualified immunity after the Court's May 1, 2009 ruling (the "May 1st ruling") on the parties' cross-motions for summary judgment.  (Mot. p. 1; <u>see</u> Docket No. 87.)  The School Defendants argue substantially as follows:  Farnan's FAC and various assertions in Farnan's Briefs filed throughout this action indicate that "this case at no time 'concern[ed] a few incidental statements of a teacher that may periodically reflect upon the teacher's personal beliefs' but concerned [Corbett's] alleged 'continual and incessant actions.'"  (Mot. p. 1.)  In other words, this action was based on allegations that Corbett's continual and incessant comments violated the Establishment Clause.  (<u>Id.</u> at 3.)  In the May 1st ruling, the Court found that only one of Corbett's statements was in violation of the Clause.  (<u>Id.</u>)  But, in 2007, the law was not clearly established that a single statement by a teacher made during a year-long course could trigger an Establishment Clause

---

      [3]  The deadline for filing amended pleadings in this action was August 17, 2008.  (Docket No. 31.)  The deadline for filing motions was March 30, 2009.  (Docket No. 41.)

violation.  (<u>Id.</u> at 2.)  Thus, the School Defendants argue, it only became apparent that Corbett was entitled to qualified immunity after the May 1st ruling.  (<u>Id.</u> at 6.)

Although the issue presents a fairly close question, the Court finds that there is good cause to amend the pleading and to allow for a determination of qualified immunity in this action.  This is because the May 1st ruling, which was difficult to predict, made it far more likely that Corbett would succeed on a qualified immunity defense.

It would certainly have been prudent for the School Defendants to plead qualified immunity at the outset of this litigation.  However, it was far from clear at the outset that the Court would find an Establishment Clause violation based on only one statement.  Farnan's FAC sets forth approximately five and a half pages of statements that he alleged were examples of Corbett's violations of the Clause. Farnan also argued throughout this litigation that Corbett had a pattern and practice of making comments which were hostile to religion.  In addition, as discussed below, the Court is not aware of any cases in which an Establishment Clause violation was found based on a single statement which was hostile to religion and which was made during a lengthy course.  Thus, it would have been somewhat difficult to predict that the Court would find a violation based on one comment.

In addition, had the Court found no violation in this action, a qualified immunity defense would be moot.  Had the Court found multiple violations, it is highly likely that a qualified immunity defense would have been unsuccessful because multiple statements made in violation of the Clause would likely be found to be a clearly established violation.[4]  Here, the Court found that only one

---

[4] Indeed, Farnan contends that "at the time Dr. Corbett made the statements at issue, it

statement was in violation of the Clause.  As discussed below, the Court finds that it was not clearly established that one statement such as the "Peloza statement" made by a teacher during a semester or year-long course would violate the Clause. Therefore, the Court finds that the School Defendants have shown a sufficient reason for raising the qualified immunity defense after the May 1st ruling.[5]

b.    Case Law

The Court finds that the grant of relief under Rule 16 comports with the relevant case law.  The Court recognizes that the good cause standard "primarily considers the diligence of the party seeking the amendment" and that the district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension."  Johnson, 975 F.2d at 609.  Given that the Court has found that the likelihood of success on the qualified immunity defense only became apparent after the May 1st ruling, the Court cannot say that the School Defendants were not diligent.  A diligent party may nevertheless fail to raise defenses which appear unlikely to succeed.[6]

---

was clearly established that an overarching theme of disapproval violated the Establishment Clause."  (Opp. p. 11.)

[5]  The Court also notes that the School Defendants were diligent in bringing the present motions following the May 1st ruling.  The School Defendants first filed the motions on June 8, 2009, a little over a month after the May 1st ruling.  (Docket Nos. 92-93.)

[6]  The case of Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 469-70 (D.N.J. 1990), suggests that a party may provide a satisfactory explanation for a delay by showing that the availability of an affirmative defense was not apparent when the answer was filed.

Moreover, the Court recognizes that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Id.  The Court does not find that the School Defendants were careless.  In Johnson, the court found that the plaintiff had failed to demonstrate good cause to amend the scheduling order to join an additional defendant.  Id.  The court noted that the defendant in that case had sent a letter explicitly offering to stipulate to a substitution of the proper defendant and also specifically noted in its pretrial status conference report that the plaintiff might wish to add additional defendants.  Id. at 609-10.  The court found that the plaintiff failed to heed clear and repeated signals that not all the necessary parties had been named in the complaint.  Id. at 609.  The court also explained that this was "precisely the kind of case management that Rule 16 is designed to eliminate." Id. at 610.  Thus, in Johnson, the court found a lack of diligence based on extreme and unexplained carelessness that, for the reasons discussed above, does not exist the present case.  The School Defendants had at least a plausible reason to believe that a qualified immunity defense would not succeed and did not have the type of notice provided in Johnson.[7]  Therefore, the Court finds that, although perhaps not the most prudent course of action, the failure to plead qualified immunity at the outset of this action cannot be characterized as negligent or careless.[8]

---

[7] Although the fact that the Unions' plead qualified immunity in their Answer may have reminded the School Defendants of the existence of the defense, the Court cannot say that the School Defendants were careless in believing that the defense would not have been successful.

[8] The Court also notes that the Ninth Circuit has found that "[w]here . . . the court determines that refusal to allow a modification might result in injustice while allowance would cause no substantial injury to the opponent and no more than slight inconvenience to the court, a modification should ordinarily be allowed." U.S. v. First Nat. Bank of Circle, 652 F.2d 882, 887

In addition, the Court finds that the case of <u>Torres v. Commonwealth of Puerto Rico</u>, 485 F.3d 5 (1st Cir. 2007), lends support to the finding of good cause, despite the fact that the court in that case affirmed the district court's refusal to consider a motion for qualified immunity.  In <u>Torres</u>, the district court declined to consider the defendant's motion for qualified immunity because it was filed after a clearly communicated deadline.  <u>Id.</u>  The district court was "struggling to keep the case on track," at least in part due to defendants dilatory tactics, for which they were sanctioned.  <u>Id.</u> at 7.  The appellate court noted that "[t]hese tactics rendered the original discovery deadline impracticable and forced the district court to vacate the trial date.  The court proceeded to set new deadlines. . . .  The court unequivocally warned the parties that '[a]ny further delays or refusals to engage in discovery will result in the imposition of further sanctions.'"  <u>Id.</u>  The parties nevertheless sought a further extension of the discovery deadline and the district court stated that "its 'patience [was] at an end,' and imposed monetary sanctions on both sides."  <u>Id.</u>  The district court then gave another clear instruction that no further extensions of deadlines would be allowed.  <u>Id.</u> at 8.  The defendants then filed a motion for judgment on the pleadings well after the deadline had passed.  <u>Id.</u>

On appeal, the First Circuit affirmed, referring to the "bedrock" principle that "trial judges have an abiding responsibility for the efficient management of the cases on their dockets."  <u>Id.</u> at 10.  The court also explained that the parties in that

---

(9th Cir. 1981).  As discussed in this Order, allowing a determination of qualified immunity causes no undue injury to Farnan and no meaningful inconvenience to the Court.

case brazenly "flouted [the district court's] authority in this case."  Id.  The court

underscored one of the main reasons for denying a motion as untimely: namely,

that it may interfere with effective case management.  The present case is

distinguishable in that the School Defendants have not engaged in a "pattern of

dilatory conduct," nor have they flouted this Court's authority or infringed on the

efficient management of this action.[9]  See id.


The case of Southwestern Bell Telephone Co. v. City of El Paso, 346 F.3d

---

[9]  The appellate court also noted that the parties in Torres failed to raise the issue of

qualified immunity at the pretrial conference.  Torres, 485 F.3d at 8.  In contrast, the final

pretrial conference has not taken place in the present action.  The Court notes that "[o]rders

entered before the final pretrial conference may be modified upon a showing of 'good cause' . . .

but orders 'following a final pretrial conference shall be modified only to prevent manifest

injustice.'"  Johnson, 975 F.2d at 608.


   The use of the good-cause standard, rather than allowing modification only in

   cases of manifest injustice as is done for pretrial orders, indicates that there may

   be more flexibility in allowing some relief. As noted by the Advisory Committee,

   this more liberal standard was included in recognition that the scheduling order is

   entered early in the litigation and that if a stricter approach to modification were

   adopted, counsel might be encouraged to request the longest possible time for

   completing pleading, joinder, and discovery because of a fear that an extension

   would be impossible.


6A Wright, et al., Federal Procedure and Practice § 1522.1.

541, 546 (5th Cir. 2003), is also instructive.  There, the court affirmed the district court's denial of defendants' motion for leave to amend to include additional counterclaims.  Id. at 547.  The district court denied leave to amend because the deadline provided in the scheduling order had passed, the case was set for an upcoming trial, the defendants had already amended their answer twice, and raising the new counterclaims at a late date would prejudice the other party.  Id. at 546. On appeal, the Fifth Circuit explained that "[i]n determining good cause [under Rule 16], we consider four factors: '(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'"  Id.  The court affirmed because the defendants did not offer a satisfactory explanation for the delay in seeking leave to amend, there would be significant prejudice to the other party in allowing untimely additional counterclaims, and the proposed counterclaims were likely to fail.  Id. at 547.

The present case is distinguishable.  Here, the Court has found that the School Defendants have provided a plausible explanation for their delay as discussed above.  The addition of the qualified immunity defense is extremely important to the action because it is a core part of Section 1983 jurisprudence, and could potentially provide Corbett a well-recognized immunity.  Finally, as discussed below, Farnan has not demonstrated that he would be prejudiced by the amendment.  Although diligence is the main focus of the good cause inquiry in the Ninth Circuit, the existence or degree of prejudice to the party opposing the modification is also relevant.[10]  See Johnson, 975 F.2d at 609.

---

[10] The Court recognizes that Southerwest Bell Telephone Co., a Fifth Circuit case, is merely persuasive and not binding authority in this action.

11

1

2

     c.  Purpose of Rule 16(b)

3

  Furthermore, the Court concludes that a finding of good cause in this case

4

comports with the underlying purpose of Rule 16(b).  In setting forth the diligence

5

standard, <u>Johnson</u> cites to <u>Harrison Beverage Co. v. Dribeck Importers, Inc.</u>, 133

6

F.R.D. 463, 469 (D.N.J. 1990), which provides insight into the underlying purpose

7

of Rule 16(b).  <u>Johnson</u>, 975 F.2d at 609.  The court in <u>Harrison Beverage Co.</u>

8

explained that:

9

10

11

  Rule 16(b), added in 1983, requires the entry of scheduling orders

12

  governing among other things, motions to amend pleadings or to join

13

  new parties, the close of discovery, and the filing of motions. Those

14

  deadlines can only be extended for "good cause" pursuant to Rule

15

  16(b). The attempted injection of new issues on the eve of trial, as in

16

  this case, necessarily implicates the scheduling orders entered in this

17

  case, to the extent that further discovery would be required, further

18

  dispositive motion practice would occur, and the Joint Final Pre-Trial

19

  Order would have to be amended to accommodate new developments.

20

  To argue that there should be a liberal policy of freely permitting

21

  amendments is to ignore, in an old case such as this one, the purposes

22

  of case management and the scheduling orders which "are at the heart

23

  of case management."  <u>The 1983 amendments to the Federal Rules of</u>

24

  <u>Civil Procedure were enacted specifically to require "judicial control</u>

25

  <u>over a case and to schedule dates for completion by the parties of the</u>

26

  <u>principal pretrial steps. . . ."</u>  <u>The careful scheme of reasonable</u>

27

  <u>framing and enforcement of scheduling orders for case management</u>

  <u>would thus be nullified if a party could inject amended pleadings upon</u>

28

1
2

<u>a showing of less than good cause after scheduling deadlines have</u>
<u>expired</u>.

3
4

<u>Harrison Beverage Co.</u>, 133 F.R.D. at 469 (citations omitted) (emphasis supplied).

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

Thus, the <u>Harrison</u> court explained that Rule 16(b) was added to the Federal Rules of Civil Procedure in order to facilitate judicial control over a case and to set a schedule for pretrial steps.[11]  In the present case, however, asserting the qualified immunity defense at this point in the litigation has created no meaningful case management issues nor has it infringed on the efficient adjudication of the action. As discussed above, if the School Defendants had plead qualified immunity and argued the defense at the outset of the litigation, Corbett would most likely not have been granted qualified immunity.  Thus, the parties would presumably still have filed their cross-motions for summary judgment and the Court would have conducted the same analysis to determine whether the Establishment Clause had been violated.  If the School Defendants had asserted qualified immunity on a motion for summary judgment, the Court would nevertheless have first conducted the same substantive analysis as to whether Corbett violated the Establishment Clause.  Moreover, asserting the defense at this point will not result in any need for additional discovery.  The qualified immunity determination is a question of law that will be based on the factual record already developed in this case.[12]  Thus,

21
22
23
24
25
26

[11]  <u>See also</u> <u>Forstmann v. Culp</u>, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (noting that "[t]he Advisory Committee on Rules suggested that early judicial control over modern litigation, including the scheduling of dates for the completion of the principal pretrial steps by the parties, is desirable because cases will then be 'disposed of by settlement or trial more efficiently and with less cost and delay than when the parties are left to their own devices.'").

27

[12]  "An officer's subjective understanding of the constitutionality of his or her conduct is

28

raising the defense at this point, as opposed to earlier in the litigation, has created no meaningful issues of case management and has not impaired the efficient adjudication of the action.[13]  Therefore, allowing the amendment comports with the underlying purpose of Rule 16(b).

Accordingly, the Court finds that the School Defendants have demonstrated good cause under Rule 16(b).

### 2.    Rule 15(a)

Having found good cause for the amendment, the Court turns to the issue of

---

irrelevant."  Fogel v. Collins, 531 F.3d 824, 833 (9th Cir. 2008).  The determination of whether Corbett is entitled to qualified immunity based on an objective, not a subjective standard.  See Anderson v. Creighton, 483 U.S. 635, 641 (1987).   Therefore, Farnan will not need to conduct further discovery to determine whether Corbett believed his actions were reasonable.

[13]  Similarly, the case of Amcast Indus. Corp. v. Detrex Corp., 132 F.R.D. 213, 218 (N.D.Ind.,1990), is instructive.  There, the court found that scheduling orders were designed to avoid a motion for summary judgment followed by a motion for leave to amend.  Id.  However, the court explained that the purpose for establishing a deadline for amending the pleadings was so that "parties electing to file dispositive motions might have some assurance that their efforts would not be nullified by changes in the pleadings, and so that the court would have some assurance that the case would proceed in an orderly and expeditious fashion."  Id.  Here, no efforts are nullified by a determination on the merits of qualified immunity at this point and the case would not have proceeded in a more orderly or expeditious fashion had the defense been raised at an earlier point.

14

whether the amendment is proper under Rule 15(a)'s liberal standard.  First, the Court finds no undue delay, bad faith, or dilatory motive on the part of the School Defendants.  As discussed above, the Court has found the School Defendants' explanation for the delay to be plausible.[14]  The School Defendants do not have a history of dilatory tactics in this litigation.  See Thornton v. McClatchy Newspapers, Inc., 261 F.3d 789, 799 (9th Cir. 2001).  Nor does the Court find that the School Defendants have intentionally waited to assert the qualified immunity defense for some improper purpose.

### a.   Prejudice

The Court finds that Farnan will not be prejudiced by the amendment.  As discussed above, no further discovery will be needed regarding the qualified immunity defense because the issues presented are questions of law which are based on the factual record already developed in the action.[15]  No meaningful

---

[14]  Even if the Court found undue delay, such delay alone is not sufficient to support denial of the proposed amendment.  Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990).  Farnan argues that Morongo supports a denial of the proposed amendment.  (Opp. p. 3.)  However, in Morongo, the court denied leave to amend finding that the amendment would greatly alter the nature of the litigation and would prejudice the opposing party.  Id.  Here, asserting qualified immunity based on the facts and circumstances developed in the underlying record would not greatly alter the nature of the litigation.

[15]  "The prejudice to the opposing party is greater where the tardy amendment will require a reopening of discovery, and it is lessened when the new issue presents solely an issue of law to be determined upon application to the existing facts. For instance, in Foman itself, the amendment was permitted even though discovery had expired where the inclusion of the

future delay will result if the School Defendants raise the issue of qualified immunity. Farnan argues that "[a]llowing the case to be fully litigated for approximately eighteen months, and allowing Plaintiffs to incur substantial costs and attorneys' fees in the process, only to grant immunity following a dispositive ruling, would be an injustice to Plaintiffs."[16] (Opp. p. 5.) However, Farnan has not demonstrated that he would have had to expend a lesser effort or incur lesser costs and fees in this litigation if the qualified immunity defense had been plead and raised at an earlier point in time. Farnan's argument might carry weight if Corbett would have succeeded on a qualified immunity defense at the outset of the litigation or if raising the qualified immunity defense early on would have eliminated the need for a determination on the merits of whether a constitutional violation occurred. As discussed above, however, Corbett would very likely not have succeeded on a qualified immunity defense early on. In addition, if the School Defendants had asserted the defense in connection with the motions for

_____

additional theory of quantum meruit would not have required any more discovery." <u>Harrison Beverage Co.</u>, 133 F.R.D. at 469-70.

[16] Farnan also argues that a finding of qualified immunity would prejudice Farnan because the Court's May 1st ruling would likely be vacated. (Opp. pp. 12-13.) Farnan suggests that he would be prejudiced because the Court would be "unraveling [ ] a ruling vindicating a high school student's constitutional rights." (<u>Id.</u> at 13.) A grant of qualified immunity for an official who violated an individual's constitutional rights, however, does not constitute prejudice within the meaning of Rule 15(a). Although the Court found that the Peloza statement was a violation of the Establishment Clause, the doctrine of qualified immunity is designed to immunize government officials <u>in spite of</u> conduct amounting to a constitutional violation. A grant of qualified immunity does not erase the Court's finding that Corbett violated the Establishment Clause.

summary judgment, the Court would have nevertheless considered the issue of whether a constitutional violation occurred.[17]

### b.    Futility

The Court also finds that the amendment is not futile.  Farnan argues that the proposed amendment has no value because Farnan is seeking only nominal damages against Corbett.  However, the qualified immunity defense also bars claims for costs and attorneys' fees.  In D'Aguanno v. Gallagher, 50 F.3d 877, 881 (11th Cir. 1995), the court explained:

> A question has been presented in this appeal about whether the monetary damages which the defense of qualified immunity bars include plaintiffs' claims for costs, expenses of litigation, and attorneys' fees.  The answer is "yes."  We hold that, for qualified immunity purposes, the term "damages" includes costs, expenses of litigation, and attorneys' fees claimed by a plaintiff against a defendant in the defendant's personal or individual capacity.  The policy that supports qualified immunity-especially removing for most public officials the fear of personal monetary liability-would be undercut greatly if

---

[17]  The only conceivable prejudice to Farnan would be if the Court were to assume that, had the School Defendants plead qualified immunity at the outset, Farnan would have decided not to pursue the litigation.  The Court declines to make this speculative assumption.  For one thing, at the outset of the litigation it appeared unlikely that Corbett would succeed on the qualified immunity defense.  In addition, the Unions plead qualified immunity in their Answer. Thus, Farnan was on notice that the issue might be raised later in the case.

government officers could be held liable in their personal
capacity for a plaintiff's costs, litigation expenses, and
attorneys' fees in cases where the applicable law was so
unsettled that defendants, in their personal capacity, were
protected from liability for other civil damages.

Farnan has asserted his intention to move for attorneys' fees as the prevailing party
in this action. Thus, there is certainly value to the qualified immunity defense in
this action. Farnan argues that a finding that Corbett is entitled to qualified
immunity would circumvent Congress' intent to permit prevailing plaintiffs to
recover attorneys' fees and costs. (Opp. pp. 6-7.) However, courts have clearly
found that attorneys' fees and costs are not recoverable from an official who is
protected by qualified immunity. The Court also finds that there is value to
Corbett in a finding that the law was not clearly established at the time he made the
Peloza comment.[18]

### c.    Failure to Plead/Argue

Farnan also argues that the Court should not allow the proposed amendment
because the School Defendants did not plead qualified immunity and even if they
had, they failed to preserve the defense by not asserting it prior to a ruling on the
dispositive motions.[19] (Opp. p. 15; Suppl. Br. p. 1.) The Court disagrees. The
case of Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir. 1993), is instructive.

---

[18]  In addition, the amendment is not futile because, as discussed below, the Court finds
that Corbett is entitled to qualified immunity.

[19]  Although Farnan does not specify, these issues could go to the question of futility,
undue delay, or prejudice under Rule 15(a).

18

There, the plaintiff argued that the defendants waived the defense of qualified immunity by failing to raise it as an affirmative defense in their answer to the complaint.  The Ninth Circuit found that:

> Qualified immunity is an affirmative defense that should be pled by the defendant.  In the absence of a showing of prejudice, however, an affirmative defense may be raised for the first time at summary judgment. Camarillo has not claimed prejudice; nor is any suggested by the record. The defense of qualified immunity was not waived.

Id. (citations omitted).

Thus, the Ninth Circuit allowed the defendant to seek qualified immunity even though the defendant did not plead the defense and first raised it at summary judgment.  In the present case, the School Defendants first raised the issue of qualified immunity shortly after the ruling on the parties' cross-motions for summary judgment.[20]  The Court finds that there is no meaningful difference

---

[20]  The Ninth Circuit has found that it may be preferable for parties to wait to argue qualified immunity.  The court has explained that:

> We are therefore moved at the outset to suggest that while government officials have the right, for well-developed policy reasons, to raise and immediately appeal the qualified immunity defense on a motion to dismiss, the exercise of that authority is not a wise choice in every case.  The ill-considered filing of a qualified immunity appeal on the pleadings alone can lead not only to a waste of scarce public and judicial resources, but to the development of legal doctrine that

between raising the issue at summary judgment and raising the issue shortly after summary judgment, given that Farnan was not prejudiced by the delay.[21]

The case of Graves, 339 F.3d 828, is also instructive. There, the defendants asserted the qualified immunity defense in their answer to the complaint. Id. at 845-46. The court first addressed the issue of qualified immunity sua sponte on appeal. Id. The Ninth Circuit explained that while it generally does not address

> has lost its moorings in the empirical world, and that might never need to be determined were the case permitted to proceed, at least to the summary judgment stage.

Kwai Fun Wong v. U.S., 373 F.3d 952, 956-57 (9th Cir. 2004) (emphasis supplied) (citations omitted). The use of the phrase "at least to the summary judgment stage" strongly suggests that defendants may wait to raise the issue even after the summary judgment stage. The reasoning in Kwai Fun Wong applies to the present case. The Supreme Court recently stated that it "often may be difficult to decide whether a right is clearly established without deciding precisely what the constitutional right happens to be." Pearson, 129 S.Ct. at 818. Given the complexity of Establishment Clause jurisprudence and the novel set of facts presented, it was preferable to determine qualified immunity in this action after the Court's ruling with respect to whether a constitutional violation occurred.

[21] The ruling in Camarillo seems to suggest that, absent a showing of prejudice, a court may consider the issue of qualified immunity when raised for the first time at summary judgment, whether or not the defendant has shown good cause to amend the pleading. Although somewhat unclear, the court may be indicating that, in such circumstances, it is not necessary to amend the pleading and that the court may simply consider qualified immunity. The Court need not rely on this interpretation, however, given that the Court has found good cause above.

20

issues raised for the first time on appeal, it has nevertheless done so in exceptional circumstances such as when "the issue presented is purely one of law and either does not depend on the factual record developed below or the pertinent record has been fully developed." Id. The court then found that "[q]ualified immunity is an issue of law and, to the extent that it depends on the factual record, that record has been fully developed below, as it is the same record that relates to" the determination of whether there was an underlying constitutional violation. Id.

Likewise, the qualified immunity issue in the present case is a question of law that depends on a factual record which has been fully developed. Therefore, the fact that the School Defendants have not raised the issue of qualified immunity until now does not prevent this Court from addressing it.

Farnan argues that Graves is distinguishable because the defendants in that case had plead qualified immunity. However, this Court has found good cause to amend the Answer to include a qualified immunity defense. Moreover, Camarillo demonstrates that failure to plead qualified immunity is not a fatal flaw. In addition, the Unions plead qualified immunity in their Answer.

The Court finds that the Unions may plead qualified immunity on their own behalf and on behalf of Corbett, and therefore, the School Defendants' amendment to their Answer is not necessary in order for the Court to rule on the issue of qualified immunity.[22] On April 28, 2008, this Court granted a motion allowing the

---

[22] In their Answer, the Unions' sixth affirmative defense provides that "the statements of Dr. Corbett alleged in the FAC were performed within the scope of his official duties and were subject to a qualified immunity." (Unions' Answer, Docket No. 27, ¶ 6.) The Court recognizes that the School Defendants still need to show good cause to amend the Scheduling Order to bring

Unions to intervene for defendants in the action. (Docket No. 29.) The Court found that the Unions had a protectable interest in the action. (Id.) In his FAC, Farnan seeks attorneys' fees, costs, and expenses against all Defendants. The Court sees no reason that, if the motion for qualified immunity is not allowed to proceed or if the motion fails, that the Unions would not be liable for those fees as defendants. Thus, the Unions have a direct interest in pursuing the qualified immunity defense. As noted above, the Unions have joined in both the motion to amend and the motion for a determination regarding qualified immunity.

Farnan argues that the Unions may not assert the qualified immunity defense on Corbett's behalf and that only Corbett may plead or assert such a defense. (Suppl. Br. p. 1.) Indeed, the Supreme Court has stated that "[q]ualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official." Harlow, 457 U.S. at 815 (citing Gomez v. Toledo, 446 U.S. 635 (1980)). However, reading Harlow and Gomez in context, there is nothing to suggest that the Court was indicating that defendant intervenors could not plead qualified immunity on a defendant official's behalf. Rather, the Court was merely making the point that plaintiffs do not have the burden of the absence of pleading qualified immunity. See Gomez, 446 U.S. at 640-41.

Farnan also argues that the Unions may not plead qualified immunity because they would be improperly expanding the issues involved in the action and because intervenors may only argue issues raised by another party in the pleadings. (Suppl. Br. p. 3.) In Stewart-Warner Corp. v. Westinghouse Elec. Corp., 325 F.2d 822, 827 (N.Y. 1963), the court found that:

the motion for a determination on qualified immunity.

22

The whole tenor and framework of the Rules of Civil Procedure preclude application of a standard which strictly limits the intervenor to those defenses and counterclaims which the original defendant could himself have interposed. Where there exists a sufficiently close relationship between the claims and defenses of the intervenor and those of the original defendant to permit adjudication of all claims in one forum and in one suit without unnecessary delay . . . the district court is without discretion to deny the intervenor the opportunity to advance such claims.

Here, the issue of qualified immunity is sufficiently connected to the underlying issues in the case.  In addition, Farnan has presented no authority indicating that intervenors are limited to those defenses plead or argued by the other parties.

Furthermore, the Court finds that the Unions have associational standing to assert qualified immunity on behalf of its member, Corbett.[23]   The Supreme Court has found that:

Even in the absence of injury to itself, an association may have standing solely as the representative of its members. . . . The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.  So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable

---

[23]  The parties do not dispute that Corbett is a Union member.

23

to proper resolution of the cause, the association may be an
appropriate representative of its members, entitled to invoke the
court's jurisdiction.

Warth v. Seldin, 422 U.S. 490, 511 (1975) (citations omitted).

The above requirements are met in this case.[24]  Corbett was facing possible
injury as a defendant and the individual participation of each injured party was not
indispensable given that this case primary involved questions of law.  Therefore,
the Court rejects Farnan's argument that Corbett's qualified immunity defense
should fail because the School Defendants did not plead the defense.

> d.    Stage of Litigation

Farnan also argues that it is simply too late to raise the issue of qualified
immunity at this stage of the litigation.  (Opp. p. 1.)  Farnan suggests that an
official may not raise a defense of qualified immunity following a dispositive
ruling.  (Id.)  This is not the state of the law in the Ninth Circuit.  In Graves, the
court addressed the issue of qualified immunity sua sponte on appeal following a
jury verdict at the district court level.  Graves, 339 F.3d at 832, 845-46.  If

---

[24]  This action also meets the three part test set forth in Hunt v. Washington State Apple
Advertising Comm'n, 432 U.S. 333, 343 (1977).  There, the Court found that "an association has
standing to bring suit on behalf of its members when: (a) its members would otherwise have
standing to sue in their own right; (b) the interests it seeks to protect are germane to the
organization's purpose; and (c) neither the claim asserted nor the relief requested requires the
participation of individual members in the lawsuit."  Id.

qualified immunity may be addressed for the first time on appeal following a jury verdict, it is certainly reasonable to address the issue following a ruling on motions for summary judgment.

Farnan points out that the Supreme Court has found that the doctrine of qualified immunity recognizes an entitlement not to stand trial or face the other burdens of litigation.  (Opp. p. 5.)  Indeed, the Supreme Court has explained that "[t]he entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The Court disagrees with Farnan's interpretation of this language.  Farnan's suggestion that the Supreme Court held that qualified immunity is never available after trial is at odds with Graves, where the Ninth Circuit resolved the issue of qualified immunity for the first time on appeal following a jury trial.  This Court interprets Mitchell to mean that a defendant is entitled to have a court determine the issue of qualified immunity prior to suit and that this entitlement is essentially lost if the defendant is required to litigate through trial.  This is not to say that a defendant may not raise the defense after trial or after a dispositive ruling.  The Supreme Court has also explained that "[q]ualified immunity is 'an immunity from suit rather than a mere defense to liability.'"  Id.  In other words, qualified immunity provides both immunity from suit and a defense to liability.  There is no reason that an officer entitled to qualified immunity who is deprived of the benefit of immunity from suit should also be deprived of the defense to liability, which includes protection from having to pay attorneys' fees and costs.

Accordingly, Farnan has failed to demonstrate why leave to amend is not proper or why the Court should not make a determination on qualified immunity.

1

2

### B.    Qualified Immunity

3    The Court now turns to the question of whether Corbett is entitled to

4    qualified immunity.  Under the first prong of <u>Saucier</u>, courts consider whether a

5    constitutional right was violated.  <u>Saucier</u>, 533 U.S. at 201.  In its ruling on the

6    parties' cross-motions for summary judgment, the Court found that the Peloza

7    statement constituted improper disapproval of religion in violation of the

8    Establishment Clause.  (<u>See</u> Docket No. 87.)  Thus, the first prong of <u>Saucier</u> has

9    been satisfied.

10

11    Next, the Court turns to the second prong of <u>Saucier</u> and considers whether

12    the right was clearly established.  <u>Saucier</u>, 533 U.S. at 201.  As a preliminary

13    matter, the Court considers Farnan's argument that "whether or not Defendants had

14    the right to claim qualified immunity is tied to the facts alleged, as construed in a

15    light favorable to the Plaintiffs, not the violation found by this Court."  (Opp. p.

16    10.)  Farnan points out that the Court in <u>Saucier</u> stated that "[a] court required to

17    rule upon the qualified immunity issue must consider . . . this threshold question:

18    Taken in the light most favorable to the party asserting the injury, do the facts

19    alleged show the officer's conduct violated a constitutional right?"  <u>Saucier</u>, 533

20    U.S. at 201.

21    The Court declines to adopt Farnan's interpretation that courts are strictly

22    required to look only to allegations.  Clearly, if the facts as alleged do not amount

23    to a constitutional violation, the inquiry ends.  However, this is not to say that a

24    court may not consider evidence in the determination.  Indeed, in <u>Graves</u>, the Ninth

25    Circuit considered the evidence in the factual record below to determine whether

26    the law was clearly established and whether the officer acted reasonably.  <u>Graves</u>,

27

28

339 F.3d at 846-48.[25]  The procedural posture of <u>Graves</u> was similar to the procedural posture in the present action, given that the trier of fact had already ruled on the underlying violation before turning to examine qualified immunity.

The Court also finds that basing the qualified immunity analysis solely on alleged facts after the court or the jury has made conclusive findings could lead to absurd results.  Here, the Court has found that only one of Corbett's statements was in violation of the Establishment Clause.  As discussed below, the Court also finds that the law was not clearly established at the time Corbett made the statement.  There is no reason to preclude Corbett from obtaining qualified immunity based on alleged conduct that the Court has already ruled did not amount to a violation.

The Court further finds that the constitutional right at issue was not clearly established when Corbett made the Peloza statement.  Farnan contends that "[i]t has been clearly established for many years that the government must remain neutral with regard to religion, and it may not show its disapproval of religion."  (Opp. p. 7.)  Farnan also characterizes the right at issue as "the right to be free from a governmental actor disapproving of religion, specifically, a teacher in a public high school classroom."  (<u>Id.</u> at 6.)

First, the Court notes that this is an inaccurate statement of the law.  As discussed in the Court's May 1, 2009 Order, the Establishment Clause is not a blanket prohibition on making any disapproving or hostile statements.  The recent Ninth Circuit case of <u>Catholic League for Religious and Civil Rights v. City and County of San Francisco</u>, 567 F.3d 595 (9th Cir. 2009) ("<u>Catholic League</u>"), leaves

---

[25]  For example, the court considered the defendant's testimony that law enforcement was facing a novel situation.  <u>Graves</u>, 339 F.3d at 846-48.

no doubt as to this point.  In <u>Catholic League</u>, the Ninth Circuit found there were statements in a City and County resolution that, "taken in isolation, may be said to convey disparagement towards the Catholic Church.  But to be violative of the Establishment Clause, those statements must overwhelm the Resolution's secular dimensions."  <u>Id.</u> at 605.  In addition, the plaintiffs in that case argued, with respect to the primary effect prong of the <u>Lemon</u> test, that if the Resolution conveyed any message of hostility towards the Catholic religion, the Resolution failed the <u>Lemon</u> test.  <u>Id.</u> n.11; <u>Lemon v. Kurtzman</u>, 403 U.S. 602 (1971).  The court rejected this argument, explaining that "the focus of this prong is on the <u>primary</u> effect of the government's conduct."  <u>Catholic League</u>, 567 F.3d at 605 n.11 (internal quotation marks omitted). The court also found that, even though certain statements may be viewed as disparaging, that the Resolution satisfied the first and second prongs of the <u>Lemon</u> test.[26]  <u>Id.</u> at 608.

More importantly, however, the Court finds that Farnan's characterization of the right at issue is far too broad in the qualified immunity context.  "Whether a right is 'clearly established' for purposes of qualified immunity is an inquiry that 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'  In other words, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing

---

[26]  The Court finds that <u>Catholic League</u> is not at odds with its ruling on the merits in the May 1, 2009 ruling.  Under examination there was the city's resolution.  The disparaging and non-disparaging statements were part and parcel of the resolution focused at a single position taken by the Catholic diocese, and the disparaging statements were considered in that overall context.  The Peloza statement had no relationship to Corbett's AP class; it was a gratuitous divergence which cannot be saved by the fact that it was made during the AP class.  That statement was the proper focus of the Court's analysis.

28

violates that right.'" <u>Graves</u>, 339 F.3d at 846 (citations omitted).  In <u>Saucier</u>, the Court found that the general proposition that use of excessive force violates the Fourth Amendment was clearly established.  <u>Saucier</u>, 533 U.S. at 201-02.  The Court explained, however, that courts must consider whether the violation was clearly established in a "more particularized, and hence more relevant sense."  <u>Id.</u> Courts must consider "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  <u>Id.</u>

Farnan's characterization of the right at issue as the right to be free from a teacher disapproving of religion is far too broad.  It is similar to the general right to be free from excessive force that was rejected in <u>Saucier</u> and it does not consider the specific situation confronted by Corbett.  In <u>Graves</u>, the Ninth Circuit characterized the right at issue at a very high level of specificity.[27]  In the present case, the Court considers whether a reasonable teacher in Corbett's position teaching a semester or year-long high school course would understand that making a comment similar to the Peloza comment would violate the Establishment Clause.

The Court finds that the right was not clearly established.  The Ninth Circuit recently explained that:

For a legal principle to be clearly established, it is not necessary that

_____

[27]  The court considered "whether a reasonable officer in [the defendant's] situation would understand that he lacked probable cause to search for suspected explosives in [the plaintiff's] backpack in the proximity of a crowded street-lined parade."  <u>Graves</u>, 339 F.3d at 846.

1
2
3
4
5
6
7
8
9
10
11

"the very action in question has previously been held unlawful."
Rather, a clearly-established right exists if "in the light of pre-existing
law the unlawfulness [is] apparent." In other words, there must be
some parallel or comparable factual pattern to alert an officer that a
series of actions would violate an existing constitutional right, but the
facts of already decided cases do not have to match precisely the facts
with which an officer is confronted. The matching of fact patterns
demands only a level of particularity such "'that a reasonable official
would understand that what he is doing violates th[e] right.'" "[I]f
officers of reasonable competence could disagree on [the] issue,
immunity should be recognized."

12
13

Fogel v. Collins, 531 F.3d 824, 833 (9th Cir. 2008) (citations omitted).

14
15
16
17
18
19
20
21
22
23
24
25
26

Here, the Court is not aware of any parallel or comparable fact patterns, nor
have the parties presented such a case despite extensive briefing throughout this
action. The Court recognizes that there are numerous cases where a teacher or
school violated the Establishment Clause by conduct that favored or promoted
religion. The Ninth Circuit has explained, however, that "because it is far more
typical for an Establishment Clause case to challenge instances in which the
government has done something that favors religion or a particular religious group,
we have little guidance concerning what constitutes a primary effect of inhibiting
religion." American Family Ass'n, Inc. v. City and County of San Francisco, 277
F.3d 1114, 1122 (9th Cir. 2002). Because this case involves hostility toward
religion, the Court cannot simply compare it to cases involving pro-religious
statements in the school context. The parties have not presented any cases in
which a constitutional violation was found based on one or even a few hostile or

27
28

disapproving statements in the classroom.[28]  The Ninth Circuit has recently explained that "because whether a public employee's speech is constitutionally protected turns on a context-intensive, case-by-case balancing analysis, the law regarding such claims will rarely, if ever, be sufficiently 'clearly established' to preclude qualified immunity." <u>Dible v. City of Chandler</u>, 515 F.3d 918, 930 (9th Cir. 2008).  The present case is not one of those rarities.

Given that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," and given the lack of parallel case law, the Court finds that the right at issue was not clearly established when Corbett made the Peloza statement.[29]

---

[28]  The Court also notes the complexity of Establishment Clause jurisprudence.  The Supreme Court has explained that:

> In each case, the inquiry calls for line drawing; no fixed, per se rule can be framed. The Establishment Clause like the Due Process Clauses is not a precise, detailed provision in a legal code capable of ready application. The purpose of the Establishment Clause "was to state an objective, not to write a statute."  The line between permissible relationships and those barred by the Clause can no more be straight and unwavering than due process can be defined in a single stroke or phrase or test. The Clause erects a "blurred, indistinct, and variable barrier depending on all the circumstances of a particular relationship."

<u>Lynch v. Donnelly</u>, 465 U.S. 668, 678-79 (1984) (citations omitted).

[29]  Farnan argues that "there are no de minimus violations of the Constitution."  (Opp. p.

31

Accordingly, the Court finds that Corbett is entitled to qualified immunity.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court grants the motion to amend the Scheduling Order and to file an amended Answer to assert a qualified immunity defense.  The Court also grants the motion for qualified immunity.

<u>CONCLUDING WORD</u>

Today's decision brings this matter to a close in this Court.  Two final observations are worth noting.

First, there was a violation of Farnan's First Amendment right to be free of anti-religious remarks in the class room.  The result today does not change that.  As the Court has noted earlier, there is no such thing as a *de minimis* violation his rights.[30]

Second, today's application of the doctrine of qualified immunity

8.)  Even so, the law was not clear that Corbett's conduct would amount to even a small violation.  <u>See</u> <u>generally</u> <u>Safford Unified School Dist. No. 1 v. Redding</u>, 129 S.Ct. 2633 (2009).

[30]<u>C.F. v. Capistrano United School Dist.</u>, 615 F.Supp.2d 1137, 1156 (C.D. Cal. 2009).

recognizes that public officials operate in an environment not shared by their colleagues in the private sector. Public officials have no choice about interacting with the public; that is their job. Unlike interactions in the private sector, every interaction brings into play potential Constitutional rights and the possibility of infringement of those rights. Perhaps this is most clearly seen in the context of law enforcement where advisements of Constitutional rights, search and seizure issues, and the use of lawful force are a part of a police officer's daily responsibilities. But the same is true of a teacher presenting a challenging subject such as Advanced Placement European History which cannot be fairly treated without discussing religion, just as Corbett was doing during the fall of 2007.

Public officials must be able to do their jobs without fear that every misstep, however slight, will subject them to liability and the paralysis which goes with such a fear. Thus, the doctrine of qualified immunity looks to whether there was a clearly established right in issue. Here, the Court has found that there was not, and thus Corbett is shielded from liability–not because he did not violate the Constitution, but because of the balance which must be struck to allow public officials to perform their duties. The law as it existed in the fall of 2007 did not make clear that a single statement in an area of the law which lacks precision could violate the Constitution. The decision here on the merits advances the clarity of Farnan's right to be free of anti-religious comments, but the extent of the advance and the results of future applications of the doctrine of qualified immunity in this area are for another day and another court.

DATED: September 15, 2009

_____
JAMES V. SELNA
UNITED STATES DISTRICT JUDGE

33